UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CRAIG PRESNALL, BRIAN HUBER, JEFF
RUSHING, BRYAN SANDERS, as Trustee
of the 2012 Sanders Trust, WILLIAM
McCUTCHEN, DELANO VINCE
VINCENT, DAVID WILTGEN, NICOLAS
KYRIAZIS, HELEN KYRIAZIS, JOHN
KEITH TAYLOR, PERAN JED FORD,
GARY THOMPSON, JANIE HODGES,
WILLIAM CLAXTON, JONATHAN,
BRUCE TURNER, JEAN BORDELON,
THOMAS HAAS, BENJAMIN SWEERS,
PATRICK OGNOWSKI, KEVIN KNIGHT,
DON BOOK, GARY MASSINGILL,
WILLIAM MARCINIAK, BARRY
BENTLE, and KEN SANDERS,

        Plaintiffs,

    v.

ANALOGIC CORPORATION and
ONCURA PARTNERS DIAGNOSTICS,
LLC,

        Defendants.

No. 17 Civ. 06662 (PKC)

---

## DEFENDANTS' MOTION TO DISMISS THE THIRD, FOURTH, FIFTH, SIXTH, AND EIGHTH CAUSES OF ACTION IN PLAINTIFFS' FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ................................................................1

II.  STATEMENT OF FACTS .....................................................................2

III. ARGUMENT ........................................................................................6

    A.   Plaintiffs Fail to State a Claim for Fraud ................................................7

        1.   The Integration Provision and the Principal Plaintiffs' No Reliance
             Clause Preclude Plaintiffs' Fraud Claim.........................................7

        2.   The Specific Disclaimer Precludes Plaintiffs' Fraud Claim ....................10

        3.   Plaintiffs Do Not Identify an Actionable Statement ................................13

        4.   Plaintiffs Do Not (and Cannot) Adequately Allege that Statements
             Regarding Analogic's Future Conduct Were False When Made and
             Made with Fraudulent Intent......................................................14

    B.   Plaintiffs Fail to State a Claim for Negligent Misrepresentation..........................17

    C.   Plaintiffs' Claim for Breach of Implied Covenant Is Duplicative of Their
         Claim for Breach of Contract and Should Be Dismissed ...................................20

    D.   Plaintiffs Fail to State a Claim for Unjust Enrichment .........................................22

    E.   Plaintiffs' Claim for a Declaratory Judgment is Non-Justiciable and Duplicative
         of Their Breach of Contract Claims and Should Be Dismissed............................23

IV.  CONCLUSION.....................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937)..................................................................................................24

*ARS Kabirwala, LP v. El Paso Kabirwala Cayman Co.*,
   No. 1:16-cv-6430-GHW, 2017 WL 3396422 (S.D.N.Y. Aug. 8, 2017)...........................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................6

*ATSI Communications, Inc. v. Shaar Fund*,
   493 F.3d 87 (2d Cir. 2007)....................................................................................9, 16

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................2, 6

*Berger v. Scharf*,
   816 N.Y.S.2d 693, 2006 WL 825171 (Sup. Ct., N.Y. Cty. Mar. 29, 2006) ...............23, 24

*Bibeault v. Advanced Health Corp.*,
   No. 97 Civ. 6026 (WHP), 2002 WL 24305 (S.D.N.Y. Jan. 8, 2002) ........................11, 12

*Boart Longyear Ltd. v. Alliance Indus., Inc.*,
   869 F. Supp. 2d 407 (S.D.N.Y. 2012).........................................................................21

*Bostany v. Trump Organization LLC*,
   901 N.Y.S.2d 207 (1st Dep't 2010) ...........................................................................22

*Brinsights, LLC v. Charming Shoppes of Delaware, Inc.*,
   No. 06 Civ. 1745 (CM), 2008 WL 216969 (S.D.N.Y. Jan. 16, 2008)........................18, 20

*Camofi Master LDC v. College Partnership, Inc.*,
   452 F. Supp. 2d 462 (S.D.N.Y. 2006)......................................................................24, 25

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002).......................................................................................2

*Chill v. General Electric Co.*,
   101 F.3d 263 (2d Cir. 1996).......................................................................................17

*City of Perry v. Proctor & Gamble Co.*,
   188 F. Supp. 3d 276 (S.D.N.Y. 2016)......................................................................24, 25

*Crawford v. Franklin Credit Management Corp.*,
   758 F.3d 473 (2d Cir. 2014)...................................................................17

*Danann Realty Corp. v. Harris*,
   157 N.E.2d 597 (N.Y. 1959)..................................................................10

*Dresner v. Utility.com, Inc.*,
   371 F. Supp. 2d 476 (S.D.N.Y. 2005)..................................................8, 9

*Emergent Capital Investment Management LLC v. Stonepath Group. Inc.*,
   343 F.3d 189 (2d Cir. 2003)................................................................8, 9

*Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York*,
   375 F.3d 168 (2d Cir. 2004)..............................................14, 15, 17, 18

*Fero v. Excellus Health Plain, Inc.*,
   236 F. Supp. 3d 735 (W.D.N.Y. 2017) ....................................................6

*Goldman v. Metropolitan Life Insurane Co.*,
   841 N.E.2d 742 (N.Y. 2005).................................................................23

*Greenberg v. Chrust*,
   198 F. Supp. 2d 578 (S.D.N.Y. 2002)...............................................18, 19

*Harris v. Provident Life & Accident Insurance Co.*,
   310 F.3d 73 (2d Cir. 2002)...................................................................20

*Henneberry v. Sumitomo Corp. of America*,
   415 F. Supp. 2d 423 (S.D.N.Y. 2006).....................................................19

*Herbert H. Landy Insurance Agency, Inc. v. Navigators Management Co.*,
   No. 14 Civ. 6298 (LGS), 2015 WL 170460 (S.D.N.Y. Jan. 13, 2015)...........22

*HSH Nordbank AG v. UBS AG*,
   941 N.Y.S.2d 59 (1st Dep't 2012) ...................................................11, 13

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
   227 F.3d 8 (2d Cir. 2000)...............................................................18, 19

*In re American Int'l Group, Inc. Derivative Litigation*,
   700 F. Supp. 2d 419 (S.D.N.Y. 2010), *aff'd*, 415 F. App'x 285 (2d Cir. 2011)...............16

*J.A.O. Acquisition Corp. v. Stavitsky*,
   863 N.E.2d 585 (N.Y. 2007)..................................................................17

*JBCHoldings NY, LLC v. Pakter*,
   931 F. Supp. 2d 514 (S.D.N.Y. 2013)......................................................17

*Jordan v. Verizon Corp.*,
    No. 08 Civ. 6414 (GEL), 2008 WL 5209989 (S.D.N.Y. Dec. 10, 2008) ...................21, 22

*Kelter v. Apex Equity Options Fund, L.P.*,
    No. 08 Civ. 2911 (NRB), 2009 WL 2599607 (S.D.N.Y. Aug. 24, 2009) .........................7

*Litchhult v. USSTRIVE2, Inc.*,
    No. 10-CV-3311 (JFB) (ARL), 2011 WL 3877084 (E.D.N.Y. Sept. 1, 2011).................15

*M & T Bank Corp. v. LaSalle Bank National Association*,
    852 F. Supp. 2d 324 (W.D.N.Y. 2012)...................................................................................19

*Mandarin Trading Ltd. v. Wildenstein*,
    944 N.E.2d 1104 (N.Y. 2011).........................................................................................7

*Marine Midland Bank, N.A. v. Cafferty*,
    571 N.Y.S.2d 628 (3d Dep't 1991)..................................................................................10

*Marshall v. Hyundai Motor America*,
    51 F. Supp. 3d 451 (S.D.N.Y. 2014).................................................................................25

*McBeth v. Porges*,
    171 F. Supp. 3d 216 (S.D.N.Y. 2016)..........................................................................7, 11

*Microtel Franchise & Development Corp. v. Country Inn Hotel*,
    923 F. Supp. 415 (W.D.N.Y. 1996)...................................................................................13

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
    165 F. Supp. 2d 514 (S.D.N.Y. 2011).........................................................................11, 18

*National Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.*,
    922 F. Supp. 849 (S.D.N.Y. 1996) ...........................................................................21, 22

*Negrete v. Citibank, N.A.*,
    187 F. Supp. 3d 454 (S.D.N.Y. 2016).................................................................................16

*Netologic, Inc. v. Goldman Sachs Group, Inc.*,
    972 N.Y.S.2d 33 (1st Dep't 2013) ......................................................................................22

*Noval Williams Films LLC v. Branca*,
    128 F. Supp. 3d 781 (S.D.N.Y. 2015)..................................................................................9

*Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*,
    No. 08 Civ. 10578, 2010 WL 1257326 (S.D.N.Y. Mar. 12, 2010) ............................24, 25

*Rigney v. McCabe*,
    842 N.Y.S.2d 34 (2d Dep't 2007)......................................................................................10

*Sheppard v. Manhattan Club Timeshare Assocation, Inc.*,
  No. 11 Civ. 4362 (PKC), 2012 WL 1890388 (S.D.N.Y. May 23, 2012) .........................13

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)...................................................................................................14

*SOL Group Marketing Co. v. American President Lines, Ltd.*,
  No. 14-Cv-9929 (SHS), 2016 WL 205444 (S.D.N.Y. Jan. 15, 2016) ...............................11

*Spread Enterprises, Inc. v. First Data Merchant Services Corp.*,
  No. 11-CV-4743 (ADS) (ETB), 2012 WL 3679319 (E.D.N.Y. Aug. 22, 2012)..............21

*Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*,
  4 Misc. 3d 1019(A), 798 N.Y.S.2d 348 (Sup. Ct., N.Y. Cty. Sept. 1, 2004)....................20

*Strategic Capital Development Group, Ltd. v. Sigma-Tau Pharmaceuticals, Inc.*,
  No. 97 Civ. 2339 (RPP), 1998 WL 26191 (S.D.N.Y. Jan. 26, 1998)................................14

*U.S. Department of Treasury v. Official Committee of Unsecured Creditors of Motors
  Liquidation Co.*,
  475 B.R. 347 (S.D.N.Y. 2012)..............................................................................................24

*Warner Theatre Associates Ltd. Partnership v. Metropolitan Life Insurance Co.*,
  149 F.3d 134 (2d Cir. 1998)...........................................................................................10, 11

*Warner Theatre Associates Ltd. Partnership v. Metropolitan Life Insurance Co.*,
  No. 97 CIV. 4914 (SS), 1997 WL 685334 (S.D.N.Y. Nov. 4, 1997),
  *aff'd*, 149 F.3d 134 (2d Cir. 1998) ....................................................................................12

*Western Intermodal Services, Ltd. v. Singamas Container Industry Co.*,
  No. 98 Civ. 8275 (RPP), 2000 WL 343780 (S.D.N.Y. Mar. 31, 2000)............................18

*Zagami v. Cellceutix Corp.*,
  No. 15 CIV. 7194 (KPF), 2016 WL 3199531 (S.D.N.Y. June 8, 2016)............................16

## STATUTES, RULES, AND REGULATIONS

Federal Rule of Civil Procedure 9(b) ...............................................................1, 6, 14, 17

Federal Rule of Civil Procedure 12(b)(1) ..................................................................1, 6

Federal Rule of Civil Procedure 12(b)(6) ..................................................................1, 6

Pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6), Defendants

Analogic Corporation ("Analogic") and Oncura Partners Diagnostics, LLC ("Oncura") (together

"Defendants"), move to dismiss the third, fourth, fifth, sixth, and eighth causes of action in

Plaintiffs' First Amended Complaint for failure to state a claim upon which relief can be granted

and the eighth cause of action for lack of subject matter jurisdiction.

## I.      PRELIMINARY STATEMENT

After extensive negotiations between the parties and their respective counsel over the

course of fifteen months, Plaintiffs and Analogic executed a merger agreement for the sale of

Oncura to Analogic.  Pursuant to that agreement, Analogic provided Plaintiffs with millions of

dollars in up-front payments; and Plaintiffs gave Analogic the right to operate the consolidated

Oncura business in the best interest of Analogic as a whole, explicitly acknowledging that

Analogic's decisions could impact any possible follow-on payments to Plaintiffs based on the

future performance of Oncura.  Disappointed that they did not receive more money after the

merger, Plaintiffs now bring suit complaining of alleged extracontractual promises by Analogic

concerning the operation of Oncura post-merger.  All of Plaintiffs' claims lacks merit, and most

of them fail on their face as a matter of settled law.

Plaintiffs' claims for fraud, negligent misrepresentation, breach of the implied covenant

of good faith and fair dealing, and unjust enrichment, as well as their request for a declaratory

judgment, are plainly legally deficient.  Among other things:  (1) Plaintiffs' allegations of

reliance on Analogic's alleged pre-contractual representations are unreasonable in light of the

copious, repeated disclaimers in the Merger Agreement; (2) Plaintiffs fail to identify any

actionable non-promissory representations collateral to the terms of the contract; (3) Plaintiffs

fail to supply facts that actually contradict the challenged pre-contractual representations or

demonstrate that they were knowingly false when made; (4) Plaintiffs' allegations do not support

a plausible inference that Analogic had any special duty towards them in the context of the arms-length negotiations; (5) Plaintiffs' claims of breach of the implied duty of good faith and fair dealing and unjust enrichment are duplicative of their breach of contract claims; and (6) their request for a declaratory judgment is similarly duplicative and also non-justiciable.  Accordingly, Defendants respectfully request that this Court dismiss Plaintiffs' third, fourth, fifth, sixth, and eighth causes of action.[1]

## II.   STATEMENT OF FACTS

Analogic, a publicly traded medical imaging company, *see* Plaintiffs' First Amended Complaint ("FAC") ¶¶ 2, 86, purchased the Oncura veterinary medicine business from Plaintiffs in January 2016.[2]  The January 5, 2016 Merger Agreement marked the culmination of more than a year of negotiations.  FAC ¶ 86.  The final Merger Agreement is a 204-page document, including 26 pages of representations and warranties and 117 pages of exhibits and schedules. *See* Declaration of Hallie B. Levin ("Levin Decl."), Ex. 1 ("Merger Agt.").[3]  Oncura's representatives in the negotiations—Plaintiffs Presnall (Founder and then-CEO of Oncura), Huber (Founder and then-President of Oncura), Rushing (then-Director of North American Sales for Oncura), and William McCutchen (Member of Oncura)—were experienced leaders in the veterinary medical business as they themselves allege.  *See* FAC ¶¶ 86, 47-51.  Oncura also

---

[1] Defendants deny, but do not move to dismiss, Plaintiffs' claims for breach of the Merger Agreement, breach of Key Employment Agreements, or anticipatory repudiation.

[2] Facts asserted herein are either alleged in the Complaint or are derived from documents referenced in the Complaint or otherwise appropriate for judicial notice.  While Defendants dispute the accuracy of facts alleged in the Complaint, they are assumed to be true for purposes of this motion to dismiss.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] In considering a motion to dismiss for failure to state a claim, a district court may consider documents incorporated by reference in the complaint, and, even if a document is not incorporated, the court may consider it if the complaint "relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (internal citation omitted).

benefitted from the advice of its current counsel of record in the negotiations.  *See* Merger Agt. § 13.1(b).

Between October 2014 and January 2016, the parties engaged in lengthy pre-merger discussions.  *See* FAC ¶¶ 85-99.  Plaintiffs now allege that, during those negotiations, representatives of Analogic made various statements regarding its future operation of the Oncura business should the merger be consummated:

- "Presnall, Huber and Rushing **would** be in charge of making operational decisions for Oncura Partners after the merger," FAC ¶¶ 155(a), 166(a) (emphasis added);

- Analogic "**would** use the $2 million in working capital which Plaintiffs provided at closing to help grow Oncura Partners," FAC ¶¶ 155(b), 166(b) (emphasis added);

- Analogic "**would** provide Oncura Partners with additional experienced salesmen and marketing personnel," FAC ¶¶ 155(c), 166(c) (emphasis added);

- Analogic "**would** provide Oncura Partners with full-time accounting personnel to provide timely and accurate financial accounting and budgeting information," FAC¶¶ 155(d), 166(d) (emphasis added);

- Analogic "**was going to** provide Oncura Partners with a steady stream of products and customer support for same," FAC ¶¶ 155(e), 166(e) (emphasis added);

- Analogic "**would** bring the Calisto (bk500) [upgraded ultrasound system] to market by September 2017 to replace those products for which it discontinued production," including the SonixOne and Sonix Tablet, FAC ¶¶ 155(f), (h), 166(f), (h) (emphasis added);

- Analogic "**would** allow and assist with Oncura Partners' entry into the equine market." FAC ¶¶ 155(g), 166(g) (emphasis added).

None of these alleged promises about Analogic's future operation of the business is contained in the Merger Agreement.  Merger Agt. *passim*.  Nor do Plaintiffs allege any facts to support the inference that these statements were knowingly false when made.  *See generally* FAC.  Indeed, to the contrary, a plain reading of the Merger Agreement precludes any such inferences or extra-contractual promises.

*First*, the Merger Agreement's integration clause explicitly states that the Merger Agreement, "(including the documents and instruments referred to herein) constitutes the entire agreement among the parties to th[e] Agreement and **supersedes any prior understandings, agreements or representations** by or among the parties hereto, or any of them, **written or oral**, with respect to the subject matter hereof[.]"  Merger Agt. § 13.2 (the "Integration Provision") (emphasis added).[4]

*Second*, the Merger Agreement's Information Statement—delivered to the Plaintiffs under signature of Plaintiffs Presnall, Huber, Rushing, and Sanders (the "Principal Plaintiffs")— expressly warned the remaining Plaintiffs not to rely on alleged promises made outside of the four corners of the Merger Agreement.  *See* Levin Decl., Ex. 2, Information Statement ("Info. Stmt.") at 2.  Indeed, the Information Statement, which was furnished to the remaining Plaintiffs to seek their approval of the proposed merger (and unanimously recommended such approval), included an extensive discussion of material information that should be considered by the other Plaintiffs in evaluating the transaction.  Following a list of some twenty-four representations and warranties made by Oncura to Analogic, the Information Statement summarized the representations and warranties made by Analogic:

> [Analogic] ha[s] also made certain representations and warranties with respect to [its] organization, power, authority, financing, solvency and other matters.

Info. Stmt. at 10.

**None** of the representations and warranties contained in the Merger Agreement or other

---

[4] The Merger Agreement, Section 5.2, also incorporates the parties' Non-Disclosure, Confidentiality, and Non-Circumvention Agreement ("Confidentiality Agreement"), effective as of November 10, 2014, which memorializes the parties' arms-length relationship in connection with the merger discussions.  *See* Levin Decl., Ex. 3 ("Confidentiality Agt.") § 5(a).

information in the Information Statement include any of the alleged promises that form the basis of Plaintiffs' fraud and misrepresentation claims.  Moreover, the Principal Plaintiffs specifically instructed and cautioned the remaining Plaintiffs not to rely on any extra-contractual statements or information:

> This Information Statement summarizes certain information, which is set forth more fully in the Exhibits hereto. This Information Statement is qualified in its entirety by reference to such Exhibits (including the terms of the Merger Agreement), each of which Exhibits you should read carefully and in their entirety. **You should not rely on any information or statements that are not contained in this Information Statement or the Exhibits hereto.**

Info. Stmt. at 1-2 (the "Principal Plaintiffs' No Reliance Clause") (emphasis added).

*Third*, the Merger Agreement contains a Specific Disclaimer pursuant to which all parties agreed that Analogic would have broad discretion to operate Oncura in "the best interests of the consolidated business operations of" Analogic and its subsidiaries, recognizing that such discretion could impact the performance-based Earn-Out Payments to the Plaintiffs.  Merger Agt. § 2.9(f).[5]  The parties agreed that:

> By their adoption of this Agreement, the Holders agree and acknowledge that the **Buyer [Analogic] has the right to operate its business** (including, after the Closing, the business of the Company [Oncura]) **in a manner consistent with the best interests of the consolidated business operations of the Buyer and its subsidiaries, taken as a whole** (the "Right to Operate"). In exercising the Right to Operate, **the Buyer may** from time to time **make business decisions that may have an impact on** GAAP Revenue, Gross Margin and/or **any Earn-Out Payment**.

---

[5] The disbursement of Earn-Out Payments under the Merger Agreement was conditioned upon Oncura Partners' achievement of certain revenue and gross margin targets in the first four years after the merger.  *See* Merger Agt. § 2.1(b), 2.9(c); *id.* Schedule 2.9 at 4; *id.* Ex. G, Form of Oncura Partners Diagnostics, LLC Written Consent of Members at 2; Info. Stmt. at 7.

*Id.* § 2.9(f) (emphasis added) (the "Specific Disclaimer"). The **only** limitation on this Right to Operate is Analogic's agreement to "not knowingly, intentionally or deliberately take any action for the purpose of avoiding the payment of any Earn-Out Payment." *Id.* And the only damages Plaintiffs would be able to seek to recover in the event that they could prove a violation of that contractual provision are lost Earn-Out Payments. *Id.*[6]

### III.   ARGUMENT

As this Court is well-aware, a complaint must contain enough well-pled factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, claims of negligent misrepresentation or fraudulent misrepresentation must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b). *See Fero v. Excellus Health Plain, Inc.*, 236 F. Supp. 3d 735, 771 (W.D.N.Y. 2017) ("Rule 9(b) applies to negligent misrepresentation claims under New York law."). Here, Plaintiffs fail to allege sufficient facts to sustain claims for fraud, negligent misrepresentation, breach of implied duty of good faith and fair dealing, unjust enrichment, or declaratory judgment and these causes of action should therefore be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Plaintiffs' request for declaratory relief is also non-justiciable and should be dismissed under Federal Rule of Civil Procedure 12(b)(1). We address each of these claims, in turn, below.

---

[6] The Information Statement emphasized the Specific Disclaimer, explaining that approval of the Merger would grant Analogic the right to "make business decisions in a manner consistent with the best interests of the consolidated business operations of [Analogic] and its subsidiaries, taken as a whole," and that such decisions "may have an impact on . . . any Earn-Out Payment." Info. Stmt. at 7.

A.      **Plaintiffs Fail to State a Claim for Fraud**

To state a claim for fraud under New York law, a plaintiff must allege: (1) "a misrepresentation or a material omission of fact which was false and known to be false by defendant," (2) that was "made for the purpose of inducing the other party to rely upon it," (3) there in fact was "justifiable reliance of the other party on the misrepresentation or material omission," and (4) injury.  *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011).[7]  Here, Plaintiffs have failed to allege—nor can they allege—that they justifiably relied on any pre-merger oral statements about Analogic's future treatment of Oncura post-merger, nor have they sufficiently alleged that any of those oral statements was known to be false when it was made or made with fraudulent intent.

1.      **The Integration Provision and the Principal Plaintiffs' No Reliance Clause Preclude Plaintiffs' Fraud Claim**

As set forth above, Plaintiffs predicate their fraud claim on a series of alleged oral representations made to them **before** they entered into the Merger Agreement regarding how Analogic would treat Oncura **after** the Merger Agreement was executed.  But as a matter of law, the Integration Provision and Principal Plaintiffs' No Reliance Clause preclude Plaintiffs' claim for fraudulent inducement.

In the context of an arms-length transaction between sophisticated parties, even "a 'standard merger clause' precludes reliance on prior representations."  *Kelter v. Apex Equity Options Fund, L.P.*, No. 08 Civ. 2911 (NRB), 2009 WL 2599607, at *8 (S.D.N.Y. Aug. 24, 2009); *see also McBeth v. Porges*, 171 F. Supp. 3d 216, 225 (S.D.N.Y. 2016) (enforcing merger clause against sophisticated plaintiffs to deny fraud claim based on pre-contractual

---

[7] The Merger Agreement contains a choice of law provision that calls for the application of New York law to all of the causes of action alleged in the Complaint.  Merger Agt. § 13.8.

representations); *Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476, 491-93 (S.D.N.Y. 2005) (same); *Emergent Capital Inv. Mgmt. LLC v. Stonepath Grp. Inc.*, 343 F.3d 189, 195-96 (2d Cir. 2003) (same).  The language of the Integration Provision in the Merger Agreement is indistinguishable from the language courts have consistently held sufficient to preclude reliance on pre-contractual representations.  *Compare Dresner*, 371 F. Supp. 2d at 491 (holding that reliance was unreasonable where "the Merger Agreement purported to 'constitute the entire agreement among the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof[.]'") *with* Merger Agt. § 13.2 ("This Agreement (including the documents and instruments referred to herein) constitutes the entire agreement among the parties to this Agreement and supersedes any prior understandings, agreements or representations by or among the parties hereto, or any of them, written or oral, with respect to the subject matter hereof[.]").

This case is strikingly similar to *Dresner* and should likewise be dismissed.  In *Dresner*, the plaintiffs were the principal shareholders of a telecommunications software company, suing the internet utility provider that bought their company; they had studied business, had "extensive practical business background," and were represented by the law firm Paul, Hastings, Janofsky and Walker in negotiating and effectuating the merger.  Similarly, here, Plaintiffs were owners of Oncura Partners Diagnostics, LLC, "a pioneer and leader in the veterinary marketplace," suing the company that bought their business; they were represented in the merger negotiations by the Principal Plaintiffs, who hold themselves out as experienced leaders in the veterinary medicine industry, as well as by the law firm Kasowitz Benson Torres, plaintiffs' counsel of record.  *See*

- 8 -

FAC ¶¶ 1, 47-51, 86; Merger Agt. § 13.1(b).[8]  In *Dresner*, the parties held extensive merger

negotiations over the course of five months; here, the parties negotiated for fifteen months,

culminating in a 204-page agreement with 26 pages of representations and warranties and 117

pages of exhibits and schedules.

As in *Dresner*, "[i]n light of the clear language of the merger clause, the sophistication of

the parties, the relative parity of bargaining power, the litany of representations and warranties

contained in the Merger Agreement, as well as the cautionary language in the Information

Statement," Plaintiffs' claimed reliance is unreasonable and their fraud claim must be dismissed.

371 F. Supp. 2d at 492-93; *see also ATSI Commc'ns, Inc. v. Shaar Fund*, 493 F.3d 87, 105 (2d

Cir. 2007) (holding that plaintiff's claims based on alleged misrepresentations during pre-

investment negotiations were barred by merger clauses).  Plaintiffs "should have protected

[themselves] by insisting that [the] representation[s] be included" in the Merger Agreement.

*Emergent*, 343 F.3d at 196.  Given the Integration Provision, the "extensive contractual

representations about other matters,  [Plaintiffs'] sophistication, and the size of the transaction,

[Plaintiffs'] failure to do so precludes as a matter of law a finding of reasonable reliance upon

[D]efendants' misrepresentations."  *Id.*

Moreover, the Principal Plaintiffs' No Reliance Clause specifically instructed the

remaining Plaintiffs that they should not rely upon any representations not contained in the

Information Statement or the Merger Agreement itself.  The fact that the Principal Plaintiffs, who

were obligated to report truthfully and accurately to their fellow equityholders, confirmed to

---

[8] Defendants intend to move to disqualify Plaintiffs' counsel, Mr. Pamphilis, at the appropriate
time in accordance with the Rules of Professional Conduct.  *See, e.g.*, *Noval Williams Films LLC
v. Branca*, 128 F. Supp. 3d 781, 791 (S.D.N.Y. 2015) (granting motion to disqualify lawyer who
served as counsel in the transactions underlying the litigation).

them that they could not rely on any representations not included in the Merger Agreement only reinforces the fact that they cannot now sue on the basis of alleged extra-contractual prior oral statements.

### 2.    The Specific Disclaimer Precludes Plaintiffs' Fraud Claim

The Specific Disclaimer in the Merger Agreement provides an independently-sufficient reason for dismissing the fraudulent inducement claim.  "Under the New York law of fraudulent inducement, 'a specific disclaimer [in an agreement] destroys the allegations in [a] plaintiff's complaint that the agreement was executed in reliance upon . . . contrary oral representations.'" *Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998) (quoting *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 599 (N.Y. 1959) (alterations in original)).  That is, "[w]here [a] person claiming to have been defrauded has by specific contract provisions agreed to terms which are contrary to the oral promises allegedly relied upon," there can be no resort to the prior oral statements to show fraud as a matter of law.  *Marine Midland Bank, N.A. v. Cafferty*, 571 N.Y.S.2d 628, 630-32 (3d Dep't 1991) (dismissing fraud in the inducement claim); *see also Rigney v. McCabe*, 842 N.Y.S.2d 34, 35 (2d Dep't 2007) (affirming dismissal where causes of action were based on oral representations made prior to contract and "clearly barred by the specific disclaimer provisions contained in the contract").

Here, the Specific Disclaimer in the Merger Agreement, unambiguously affords Analogic "the right to operate its business (including, after the Closing, the business of [Oncura]) in a manner consistent with the best interests of the consolidated business operations of [Analogic] and its subsidiaries, taken as a whole" and discloses the potential for such decisions to impact Oncura's revenue and any Earn-Out Payments.  Each of the alleged oral misrepresentations in Plaintiffs' fraud claim concern matters—operations and management (FAC ¶¶ 155(a)), use of working capital (*id.* ¶¶ 155(b)), personnel (*id.* ¶¶ 155(c)-(d)), sales and marketing (*id.* ¶¶ 155(f),

- 10 -

(h)), and product development and production (*id.* ¶¶ 155 (e)-(h))—that fall *directly* within the ambit of Analogic's "Right to Operate" set forth in the Specific Disclaimer.  Under New York law, such pre-merger oral representations cannot be the basis for a claim of fraud.  *See, e.g.*, *HSH Nordbank AG v. UBS AG*, 941 N.Y.S.2d 59, 72-74 (1st Dep't 2012); *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 535 (S.D.N.Y. 2011) (dismissing claims for fraud and negligent misrepresentation where "a disclaimer provision . . . expressly stated that no representations other than those contained in the agreement were part of the transaction").

Nor can Plaintiffs prevail in any argument that they should be rescued from the Specific Disclaimer, Integration Provision, and Principal Plaintiffs' No Reliance Clause because Analogic had "peculiar knowledge" of its allegedly fraudulent oral statements.  *See* FAC ¶¶ 3-4, 53.  The Second Circuit has held that the "peculiar-knowledge" exception may ***not*** be invoked in a fraudulent inducement action where a plaintiff "could have insisted that the written contract terms reflect any oral understanding on a deal-breaking issue."  *Warner Theatre*, 149 F.3d at 136; *SOL Grp. Mktg. Co. v. Am. President Lines, Ltd.*, No. 14-Cv-9929 (SHS), 2016 WL 205444, at *6 (S.D.N.Y. Jan. 15, 2016); *Bibeault v. Advanced Health Corp.*, No. 97 Civ. 6026 (WHP), 2002 WL 24305, at *5 (S.D.N.Y. Jan. 8, 2002).  Further, *Warner Theatre* held that the peculiar knowledge exception does not apply to promissory statements in the context of negotiated agreements.  *See Warner Theatre*, 149 F.3d at 137 (explaining that the rationale for the peculiar knowledge exception—that costs of determining the truth or falsity of a representation are sometimes so high as to justify reliance—does not apply to promissory statements); *see also McBeth*, 171 F. Supp. 3d at 228 ("Were it otherwise, non-reliance clauses would be almost worthless, as a plaintiff could always allege that the defendant concealed an intent not to comply with the terms of their later contract.").

In amending the Complaint, Plaintiffs have added conclusory allegations that ultrasound technology and Analogic's budget and resources were subjects within Analogic's peculiar knowledge. *See* FAC ¶¶ 3-4, 53. But Plaintiffs could have insisted on the "low cost alternative" that the Merger Agreement explicitly require Analogic to provide Oncura with specified products, personnel, and resources. *Bibeault*, 2002 WL 24305, at *5. Plaintiffs admit that they were on notice of the risks involved in the transaction;[9] Plaintiffs were represented by experienced business leaders and advised by counsel in the negotiations; Plaintiffs were capable of walking away from the deal;[10] and cementing any pre-merger oral representations in the agreement was neither cost-prohibitive nor outside of the scope of their knowledge. Plaintiffs did not do that. Instead, they chose to endorse the Right to Operate contained in the Specific Disclaimer. *See* Merger Agt. § 2.9(f); Info. Stmt. at 7. Accordingly, under settled principles of New York law Plaintiffs cannot state a claim for fraud and this cause of action should be dismissed. *See Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*, No. 97 CIV. 4914 (SS), 1997 WL 685334, at *4-5 (S.D.N.Y. Nov. 4, 1997) ("[Plaintiff] having chosen to disclaim reliance with a term explicitly included in the contract, the Court will not interfere with its choice."), *aff'd*, 149 F.3d 134 (2d Cir. 1998).

---

[9] Specifically, Plaintiffs concede that, as of September 1, 2015, "Huber . . . was concerned that after the merger, 'Analogic could screw us' by not providing Oncura Partners with the necessary equipment, sales force, marketing personnel, and accounting personnel to continue to grow the company"; that "[a]s the negotiations dragged on, the parties continued to encounter obstacles"; and that "Huber . . . was concerned that Analogic could stop manufacturing equipment and not deliver on the Calisto (bk500)[.]" FAC ¶ 92. Plaintiffs also admit that, as of November 21, 2015, they were on notice that "Analogic was not good at integrating acquisitions[.]" *Id.* ¶ 93 (referencing ¶¶ 60-74).

[10] *See* FAC ¶ 2 ("In the course of those discussions, the Plaintiffs rejected Analogic's overtures three separate times.").

### 3.       Plaintiffs Do Not Identify an Actionable Statement

Setting aside the Specific Disclaimer, the Integration Provision, and the Principal

Plaintiffs' No Reliance Clause, Plaintiffs' fraud claim also fails because the allegedly-fraudulent

statements are mere statements "of an intention to perform under the contract," which are not

separately cognizable as fraud. *Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11 Civ.

4362 (PKC), 2012 WL 1890388, at *6 (S.D.N.Y. May 23, 2012) (internal citation omitted)

(dismissing claim because "Plaintiffs' fraud claim is premised on defendants' alleged failure to

perform under a contract, a theory of fraud not recognized under New York law").  Here, all of

the challenged statements concern how Analogic intended to perform under the Merger

Agreement, FAC ¶¶ 155(a)-(h).  But Analogic's "alleged misrepresentation either of its intention

to breach its contractual obligations . . . or of the manner in which it intended to perform those

obligations" cannot support a cause of action for fraud.  *HSH Nordbank*, 941 N.Y.S.2d at 74;

*Microtel Franchise & Dev. Corp. v. Country Inn Hotel*, 923 F. Supp. 415, 417 (W.D.N.Y. 1996)

("[A] fraud claim may exist only where the alleged misrepresentations concern a 'present' fact

(*i.e.*, the financial stability of the company) as opposed to a statement of future intent (*i.e.*, that

something will be provided as part of the proposed contract).").

The alleged misrepresentations here are analogous to those held inadequate to plead fraud

in *Microtel*.  In that case, the defendant-counterclaimant Country Inn alleged that Microtel failed

to do the following, *inter alia*, as promised:  provide advertising, marketing or promotional

support; provide support regarding guest complaints; provide continuing consultation and

advisory assistance; provide continuing training programs, conferences or seminars; and

establish a national advertising fund.  *See* 923 F. Supp. at 417.  The *Microtel* court held that these

constituted "alleged failures to perform promises of *future* acts" and could not be the bases for

fraud.  *Id.*  The same applies here.  Plaintiffs allege that Analogic misrepresented that Presnall,

Huber, and Rushing "*would* be in charge . . . after the merger"; Analogic "*would* use" working capital to help grow Oncura; "*would* provide" salesman, marketing personnel, and accounting personnel; "*was going to* provide" a steady stream of products and customer support; "*would* bring" the Calisto to market by September 2017; and "*would* allow and assist" Oncura's entry into the equine market.  FAC ¶¶ 155(a)-(g) (emphasis added).  These are similarly alleged failures to perform promises of post-merger acts, and therefore, not cognizable as fraud.

**4.      Plaintiffs Do Not (and Cannot) Adequately Allege that Statements Regarding Analogic's Future Conduct Were False When Made and Made with Fraudulent Intent**

Even if such statements *were* actionable as fraud, Plaintiffs fail to state a claim for fraud for the independently-sufficient reason that they have not alleged facts to show that Analogic's purportedly-fraudulent statements about the future were false when they were made and were made with fraudulent intent as required by Rule 9(b).  *See Strategic Capital Dev. Grp., Ltd. v. Sigma-Tau Pharm., Inc.*, No. 97 Civ. 2339 (RPP), 1998 WL 26191, at *4 (S.D.N.Y. Jan. 26, 1998) (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994)).  Allegations that the defendant failed to perform as promised are insufficient to demonstrate the falsity of pre-contractual representations.  *See, e.g.*, *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).

Plaintiffs do not plead facts showing that at the time the challenged statements were made Defendants did not actually intend to:  permit Key Employees to manage Oncura; provide working capital, accounting, marketing, and sales resources to Oncura; provide Oncura a steady stream of products and customer support; bring the Calisto to market; or support Oncura's entry into the equine market.  For instance, that Analogic allegedly recruited Peechatka before the Merger to assist with Oncura's management, *see* FAC ¶ 93, does not indicate that Analogic planned for Peechatka to manage Oncura to the exclusion of Oncura's then-current managers.

- 14 -

Likewise, Plaintiffs allege that Analogic misrepresented that it would provide Oncura with a steady stream of products, including the Calisto to replace the SonixTablet and SonixOne, *see id.* ¶¶ 155(e)-(f), but point to no pre-merger documents, development schedules, or statements indicating that Analogic did not actually intend to fulfill any such promises prior to the merger. *See, e.g.*, *Litchhult v. USSTRIVE2, Inc.*, No. 10-CV-3311 (JFB) (ARL), 2011 WL 3877084, at *6 (E.D.N.Y. Sept. 1, 2011) (dismissing claim that defendant fraudulently represented it "had obtained 54% of the 5,000,000 in financing it was seeking" because "nowhere in the complaint does plaintiff explain why she believed that defendant's statement was fraudulent").

Despite the opportunity to amend the Complaint, Plaintiffs' allegations that Analogic knew pre-merger that their future business decisions would be at odds with representations made pre-merger are conclusory, *see, e.g.*, FAC ¶¶ 91-92, 100, 106, 113, 126-27, or impermissibly rely on post-merger events to allege the falsity of pre-merger representations, *see, e.g.*, *id.* ¶¶ 106-09, 112-13, 127. *See, e.g.*, *Eternity Glob.*, 375 F.3d at 187 ("The fact that Morgan could not arrange to market the CDSs in October and November 2001 does not support an inference that Morgan knew or believed that no such market existed eight months earlier."). For example, Plaintiffs claim that Analogic's announcement of the merger "confirmed that Analogic never intended to support Oncura Partners' veterinary medicine business." *See* FAC ¶ 106. However, Green's statement regarding "leveraging [the] new platform and services in our *traditional human healthcare markets*," *Id.* (emphasis in FAC), is not inconsistent with an intent to support Oncura's veterinary business. Indeed, Green expected that "Analogic[] . . . [would] accelerate Oncura's growth" and Peechatka, in the same press release, "welcome[d] Oncura's growing customer base." *See id.* ¶¶ 106-07; *see also* Levin Decl., Ex. 4 (Feb. 1, 2016 Press Release) at 1. Similarly, Parks' retrospective assessment of whether it was wise for Analogic to acquire

Oncura, *see* FAC ¶ 113, has no bearing on the veracity of the pre-merger representations.  And

that Parks allegedly stated in December 2016—approximately eleven months after the merger—

that "Analogic had no intention on actually entering the equine market," *id.* ¶ 126, does not

indicate that such an intent was lacking during pre-merger discussions.  Plaintiffs allege no facts

to defeat the more plausible inference that, prior to the merger, Analogic genuinely intended to

support an entry into the equine market given that "[t]he equine marketplace was considered to

be a particularly lucrative market to . . . Analogic." *See id.* ¶¶ 3, 87.

Nor do Plaintiffs adequately allege a strong inference of fraudulent intent, as they must in

order to state a claim.  *See Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 464 (S.D.N.Y. 2016).

"To establish the requisite inference, a plaintiff must plead facts that: (i) demonstrate the

defendant's motive and opportunity to commit or assist in the fraud, or (ii) constitute strong

circumstantial evidence of the defendant's conscious misbehavior and recklessness." *Id.*

(internal quotation marks omitted).  Here, Plaintiffs cast as duplicitous Analogic's alleged

interest in Oncura's technology and patent pending processes, *see* ECF No. 30 at 3-4; FAC

¶¶ 85, 90, 100, 109, 113, 133.  But Plaintiffs do not allege that Analogic is even using the

allegedly-coveted patent.  *See generally* FAC.[11]  Plaintiffs also claim that Analogic was

motivated by the opportunity to garner "positive press" through the merger.  *See* FAC ¶¶ 85, 100,

---

[11] Nor could Plaintiffs so allege as a matter of fact.  In 2017, Analogic restructured its ultrasound business, consolidating activities and re-sizing its operations; the ultrasound segment held $55.2 million of goodwill as of December 31, 2016, but was taken down to zero as of April 30, 2017. *See* Levin Decl., Ex. 5 (excerpt of Analogic Corporation Form 10-K for fiscal year ended July 31, 2017) at 78, 86-87; *Zagami v. Cellceutix Corp.*, No. 15 CIV. 7194 (KPF), 2016 WL 3199531, at *5 (S.D.N.Y. June 8, 2016) ("Defendants' request for judicial notice is granted in regard to the Forms 10-K . . . which the Second Circuit has acknowledged may be considered on a motion to dismiss") (citing *ATSI Commc'ns, Inc. v. Shaar Fund*, 493 F.3d 87, 98 (2d Cir. 2007)); *In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 443-44 (S.D.N.Y. 2010) (taking judicial notice of a Form 10-K not cited in the Complaint), *aff'd*, 415 F. App'x 285 (2d Cir. 2011).

109, 113.  However, that is not the type of concrete benefit that supports an inference of motive.

*See, e.g.*, *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) ("The motive to maintain the

appearance of corporate profitability, or of the success of an investment, will naturally involve

benefit to a corporation, but does not 'entail concrete benefits.'").

Ultimately, Plaintiffs' notion that Analogic acquired Oncura with the intention of

hindering its profitability is absurd because the Earn-Out Payments would have only been a

portion of revenues that Analogic itself would have reaped.  A "far more likely explanation" is

that various business and market factors prevented Oncura from achieving the parties' ambitious

pre-merger expectations.  *See, e.g.*, *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 533-

34 (S.D.N.Y. 2013) ("[I]t does not follow from [Defendants'] failure to bring in any revenue that

they never intended to earn revenues for plaintiffs.").  As in *Eternity Global*, Plaintiffs fail to

state a claim for fraud merely by alleging that a defendant did not perform as promised and

"knew that its representations . . . were false when they were made."  375 F.3d at 186-87.

"[S]uch conclusory allegations do not satisfy Rule 9(b)" absent "'particularized facts to support

the inference that the defendants acted recklessly or with fraudulent intent.'"  *Id.* at 187.  Those

facts are absent here, and Plaintiffs' fraud claim should be dismissed for this reason as well.

**B.**     **Plaintiffs Fail to State a Claim for Negligent Misrepresentation**

Plaintiffs similarly fail to make out a claim for negligent misrepresentation.  To prevail

on such a claim under New York law, a plaintiff must show "(1) the existence of a special or

privity-like relationship imposing a duty on the defendant to impart correct information to the

plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *J.A.O.*

*Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007)).  Plaintiffs fail on all three of

these measures.

*First*, for the reasons set forth in Section III.A. above, Plaintiffs cannot plead reasonable reliance on any alleged prior oral misrepresentations in light of the Specific Disclaimer (providing Analogic the Right to Operate Oncura), the Integration Provision (superseding any prior representations), and the Principal Plaintiffs' No Reliance Clause (cautioning the remaining Plaintiffs not to rely on any representations not contained in the Merger Agreement itself).  *See, e.g.*, *W. Intermodal Servs., Ltd. v. Singamas Container Indus. Co.*, No. 98 Civ. 8275 (RPP), 2000 WL 343780, at \*3 (S.D.N.Y. Mar. 31, 2000) (dismissing claim for negligent misrepresentation on the grounds that plaintiff could not have "justifiably relied" on pre-contractual oral statements); *Nasik*, 165 F. Supp. 2d at 535.

*Second*, mere statements of future expectations are not actionable as negligent misrepresentations.  *See, e.g.*, *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000); *Greenberg v. Chrust*, 198 F. Supp. 2d 578, 584 (S.D.N.Y. 2002) (dismissing negligent misrepresentation claim based on defendant's "failure to perform future acts" because "no action for negligent misrepresentation lies where the alleged misrepresentation is promissory rather than factual" (quotations and citation omitted)).  Here, all of the purported misrepresentations are mere "promissory representations about future events" regarding the post-merger operation of Oncura, *see* FAC ¶ 166, that "cannot support a claim for negligent misrepresentation."  *Eternity Glob.*, 375 F.3d at 188.  For example, Plaintiffs assert that Analogic misrepresented that it "would provide" Oncura with additional salespeople and marketing personnel and that it "was going to provide" Oncura with a steady stream of products.  FAC ¶ 166.  But these are "promises of future conduct [that] are not actionable as negligent misrepresentations."  *Brinsights, LLC v. Charming Shoppes of Del., Inc.*, No. 06 Civ. 1745 (CM), 2008 WL 216969, at \*8 (S.D.N.Y. Jan. 16, 2008).  Courts routinely dismiss such negligent misrepresentation claims under the rule that

"alleged misrepresentation must be factual in nature and not promissory or relating to future events." *Hydro Inv'rs*, 227 F.3d at 20; *see, e.g.*, *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 453 (S.D.N.Y. 2006) (holding that a "promise of an initial investment i*n the future*," that an investment "would close," and repeated statements that, should the need arise, [the defendant] "'would be willing' to make additional investments *in the future*" did not constitute negligent misrepresentations).

*Third*, Plaintiffs do not sufficiently allege that Analogic's arms-length commercial relationship with Plaintiffs conferred a special duty on it, as required to state a claim for negligent misrepresentation.  "Although the precise contours of this special relationship escape easy definition, courts have held that the parties must enjoy a relationship of trust and reliance closer than that of the ordinary buyer and seller, and an arm's length business relationship is not enough to create that relationship." *Greenberg*, 198 F. Supp. 2d at 585 (dismissing claim for negligent misrepresentation) (quotation marks and citation omitted).  Indeed, "[w]hile New York courts have recognized that a business relationship can give rise to a special relationship between parties, this occurs only where 'the requisite high degree of dominance and reliance [ ] existed **prior to** the transaction giving rise to the alleged wrong, and not as a result of it.'"  *M & T Bank Corp. v. LaSalle Bank Nat'l Ass'n*, 852 F. Supp. 2d 324, 337 (W.D.N.Y. 2012) (citation omitted). "New York courts and federal courts applying New York law . . . follow the general rule of non-actionability for negligent misstatements made in the context of arms-length business transactions." *Id.* at 337-38.

Plaintiffs summarily claim that they had a special relationship of "trust" with Analogic, FAC ¶ 164, but fail to allege specific facts to support such a claim.  Plaintiffs and Analogic were engaged in an arms-length commercial transaction between sophisticated parties.  Plaintiffs

themselves emphasize their expertise in the industry.  *See id.* ¶¶ 1, 47-51, 85.  Plaintiffs were

aware of the risks associated with the merger, *see id.* ¶¶ 85, 92, and were in a position to mitigate

risks by conducting diligence and incorporating any oral promises in the Merger Agreement.  *See*

*id.* ¶ 94.  And Plaintiffs disclaimed any special relationship in the Confidentiality Agreement

incorporated into the Merger Agreement.  *See* Confidentiality Agt. § 5(a).  This kind of arms-

length commercial transaction between two sophisticated parties, both represented by counsel, in

extended negotiations resulting in a 204-page Merger Agreement with multiple exhibits and

schedules, is precisely the kind of "commercial transaction[] [that] do[es] *not* give rise to a

fiduciary relationship."  *Brinsights*, 2008 WL 216969, at *8 (emphasis added) (quotation marks

and citations omitted); *see also Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 4 Misc. 3d

1019(A), 798 N.Y.S.2d 348, at *5 (Sup. Ct., N.Y. Cty. Sept. 1, 2004) (finding no special

relationship where "[p]laintiffs fail to show anything more than arms' length dealing between

separate business entities" despite the fact that "plaintiffs relied on advice received from Toys

'R' Us about the production and marketing of toy figures, and that Toys 'R' Us was aware of any

such reliance") (citations omitted).  Here, too, Plaintiffs have failed to adequately plead the

existence of a special relationship necessary to state a claim for negligent misrepresentation.

**C.**     **Plaintiffs' Claim for Breach of Implied Covenant Is Duplicative of Their Claim for Breach of Contract and Should Be Dismissed**

Plaintiffs' cause of action for breach of implied duty of good faith and fair dealing should

be dismissed because it is duplicative of their breach of contract claim.[12]  "Under New York law,

parties to an express contract are bound by an implied duty of good faith, but breach of that duty

is merely a breach of the underlying contract."  *Harris v. Provident Life & Accident Ins. Co.*, 310

---

[12] While Analogic does not contest that Plaintiffs have adequately pled a claim for breach of the Merger Agreement, it obviously denies that it in fact breached that Agreement.

F.3d 73, 80 (2d Cir. 2002) (affirming dismissal of breach of covenant claim as duplicative of breach of contract claim) (quotations and citation omitted).  Accordingly, "raising both claims in a single complaint is redundant, and courts confronted with such complaints under New York law regularly dismiss any freestanding claim for breach of the covenant of fair dealing." *Jordan v. Verizon Corp.*, No. 08 Civ. 6414 (GEL), 2008 WL 5209989, at *7 (S.D.N.Y. Dec. 10, 2008); *see also Nat'l Football League Props., Inc. v. Dallas Cowboys Football Club, Ltd.*, 922 F. Supp. 849, 855 (S.D.N.Y. 1996) (dismissing separate claim for breach of the implied duty "as redundant" of properly-pled breach of contract claim).  Further, "in the context of a claim for breach of the covenant of good faith and fair dealing, claims are not 'in the alternative' when they are based on the exact same allegations." *Spread Enters., Inc. v. First Data Merch. Servs. Corp.*, No. 11-CV-4743 (ADS) (ETB), 2012 WL 3679319, at *5 (E.D.N.Y. Aug. 22, 2012) (internal citation omitted); *see also Boart Longyeart Ltd. v. All. Indus., Inc.*, 869 F. Supp. 2d 407, 420 (S.D.N.Y. 2012) ("While I have previously held that a duplicative implied covenant of good faith and fair dealing claim may stand as an alternative cause of action, more recent Second Circuit case law indicates that dismissal for redundancy is the appropriate outcome here.") (collecting cases).

Here, Plaintiffs' claims of breach of the Merger Agreement and breach of the implied covenant arise out of the same facts and circumstances—*i.e.*, Analogic's alleged breach of the Merger Agreement by undermining Plaintiffs' ability to perform under that Agreement and to receive the Earn-Out Payments.  For example, in their breach of contract claim, they assert that the "earn-out payment provision obligated Analogic to not knowingly, intentionally, or deliberately take any action for the purpose of avoiding the payment of any earn-out payment," FAC ¶ 146, which mirrors the allegation in their breach of the implied covenant claim that

"Analogic had an obligation to act in good faith and to deal fairly with Plaintiffs and not do anything that would destroy or impair the Plaintiffs' ability to perform under the Merger Agreement and to achieve the earn-out payments." *Id.* ¶ 176.  Likewise, in their breach of the Merger Agreement claim, Plaintiffs assert that "Analogic materially breached the Merger Agreement by knowingly, intentionally, or deliberately taking actions for the purpose of avoiding the payment of earn-out payments," *id.* ¶ 147, which mirrors the allegation in their breach of the implied covenant claim that "Analogic breached its implied duty of good faith and fair dealing by engaging in conduct that (i) deprived Plaintiffs of their ability to fully perform under the Merger Agreement; and (ii) exploit the benefits of the Merger Agreement's earn-out provision." *Id.* ¶ 177.  Both claims charge Analogic with the same essential misconduct (violations of the Merger Agreement) and seek the same damages (the Earn-Out Payments). Courts do not hesitate to dismiss claims for breach of the implied covenant under these circumstances.  *See, e.g.*, *Jordan*, 2008 WL 5209989, at *7; *Nat'l Football League*, 922 F. Supp. at 855.[13]  Accordingly, Plaintiffs' implied covenant claim should be dismissed.

**D.      Plaintiffs Fail to State a Claim for Unjust Enrichment**

Plaintiffs' claim for unjust enrichment against Analogic is impermissible as a matter of law because they have asserted a claim for breach of contract that covers the same conduct. "Recovery for unjust enrichment is not permitted where . . . the matter at issue is covered by a valid, binding contract." *Herbert H. Landy Ins. Agency, Inc. v. Navigators Mgmt. Co.*, No. 14

---

[13] *See also Netologic, Inc. v. Goldman Sachs Grp., Inc.*, 972 N.Y.S.2d 33, 34-35 (1st Dep't 2013) (affirming dismissal of implied covenant claims as duplicative of breach of contract claims "since both claims arise from the same facts and seek identical damages for each alleged breach") (quotation marks omitted); *Bostany v. Trump Org. LLC*, 901 N.Y.S.2d 207, 208-09 (1st Dep't 2010) (holding that a claim for breach of implied duty of good faith and fair dealing "cannot be maintained where . . . the alleged breach is 'intrinsically tied to the damages allegedly resulting from a breach of the contract'") (citation omitted).

Civ. 6298 (LGS), 2015 WL 170460, at *5 (S.D.N.Y. Jan. 13, 2015) (dismissing unjust

enrichment claim).  Indeed, "[a] claim of unjust enrichment 'cannot be maintained alongside a

properly asserted breach of contract claim as a matter of law.'" *ARS Kabirwala, LP v. El Paso

Kabirwala Cayman Co.*, No. 1:16-cv-6430-GHW, 2017 WL 3396422, at *3 (S.D.N.Y. Aug. 8,

2017) (citation omitted) (dismissing unjust enrichment claim notwithstanding the fact that it was

pled in the alternative).

Likewise, in their claim for unjust enrichment, Plaintiffs assert "[i]n the alternative" to

their breach of contract claim, that Analogic "obtained a benefit at Plaintiffs' expense" by, *inter*

*alia*, "taking intentional and deliberate actions for the purpose of avoiding payment under the

earn-out payment" and "stopping the production of products sold by Oncura."  FAC ¶ 183.  But

this very conduct is covered by the Merger Agreement, and Plaintiffs simultaneously allege (and

Defendants are not disputing) that their claims in that regard are governed by the valid and

enforceable Merger Agreement.  *Id.* ¶ 147.  Thus, the matter at issue in the unjust enrichment

claim is duplicated by the claim for breach of contract and the claim for unjust enrichment must

be dismissed accordingly.  *See, e.g.*, *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y.

2005) (affirming dismissal of unjust enrichment claim "because the matter is controlled by

contract").

**E.    Plaintiffs' Claim for a Declaratory Judgment is Non-Justiciable and Duplicative of
       Their Breach of Contract Claims and Should Be Dismissed**

Plaintiffs' claim for relief under the Declaratory Judgment Act should be dismissed as

non-justiciable and duplicative of their claims for breach of the Merger and Key Employment

Agreements.

Absent a concrete, actual controversy for adjudication, a claim for declaratory relief is

non-justiciable.  *See, e.g.*, *Berger v. Scharf*, 816 N.Y.S.2d 693, 2006 WL 825171, at *9 (Sup. Ct.,

N.Y. Cty. Mar. 29, 2006) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)); *see also U.S. Dep't of Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation Co.*, 475 B.R. 347, 366-67 (S.D.N.Y. 2012).  Plaintiffs' first request for declaratory relief, *see* FAC ¶ 192(a), is a textbook example of a non-justiciable controversy as it seeks "an order stating what legal standard must apply to any possible sale of the company, a sale that, at this point, remains hypothetical." *Berger*, 2006 WL 825171, at *9.  It should be dismissed accordingly.

The remainder of Plaintiffs' request for declaratory relief should be dismissed as duplicative.  The decision to grant declaratory relief is a discretionary one that requires the court to consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *City of Perry v. Proctor & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016) (citation omitted); *Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*, No. 08 Civ. 10578, 2010 WL 1257326, at *10 (S.D.N.Y. Mar. 12, 2010); *Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006).  The court may also consider "'whether there is a better or more effective remedy' than the DJA." *City of Perry*, 188 F. Supp. 3d at 286 (citation omitted).  Accordingly, "[c]ourts generally reject a DJA claim when other claims in the suit will resolve the same issues." *Id*.

Plaintiffs request a declaration that Analogic and Oncura had certain obligations under the Merger and Key Employment Agreements and that Analogic and Oncura breached those Agreements. *See* FAC ¶ 192.  But Plaintiffs' claims for Breach of the Merger and Key Employment Agreements already call for a determination on each of these issues. *See id.* ¶¶ 140-48, 185-89, 190-92.  As Plaintiffs' breach of contract claims will necessarily settle the issues for which the declaratory judgment is sought, a declaratory judgment will not "further

clarify legal relations among the parties" or lift any "cloud of uncertainty."  *Camofi Master LDC*, 452 F. Supp. 2d at 480 (dismissing a claim for declaratory relief where "the determination sought . . . will already be addressed in the breach of contract claim.").  As in *City of Perry*, where the plaintiff sought a declaration on issues that would be determined through its breach of warranty claim, dismissal of the request for declaratory relief as duplicative is proper:  "[t]he better remedy for the relief [Plaintiff] seeks is adjudication of its state-law claims."  188 F. Supp. 3d at 286; *see also Piven*, 2010 WL 1257326, at *11 (dismissing request for declaratory relief as duplicative "[g]iven that Plaintiffs' rights under the alleged agreement will be determined pursuant to an adjudication of their breach-of-contract or quasi-contract claims"); *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 472 (S.D.N.Y. 2014) (similar).

## IV.   CONCLUSION

For the reasons set forth above, the Court should grant Defendants' motion to dismiss causes of action three, four, five, six, and eight.

Dated:  January 5, 2018

/s/Hallie B. Levin
Hallie B. Levin
Fiona J. Kaye
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800 (tel.)
(212) 230-8888 (fax)
hallie.levin@wilmerhale.com

*Attorneys for Defendants Analogic*
*Corporation and Oncura Partners*
*Diagnostics, LLC*