**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CRAIG PRESNALL, BRIAN HUBER, JEFF RUSHING,
BRYAN SANDERS, AS TRUSTEE OF THE 2012
SANDERS TRUST, WILLIAM MCCUTCHEN,
DELANO VINCE VINCENT, DAVID WILTGEN,
NICOLAS KYRIAZIS, HELEN KYRIAZIS, JOHN
KEITH TAYLOR, PERAN JED FORD, GARY
THOMPSON, JANIE HODGES, WILLIAM CLAXTON,
JONATHAN BRUCE TURNER, JEAN BORDELON,
THOMAS HAAS, BENJAMIN SWEERS, PATRICK
OGNOWSKI, KEVIN KNIGHT, DON BOOK, GARY
MASSINGILL, WILLIAM MARCINIAK, BARRY
BENTLE, AND KEN SANDERS,

          Plaintiffs,

   - against -

ANALOGIC CORPORATION and ONCURA
PARTNERS DIAGNOSTICS, LLC

        Defendants.

No. 17 Civ. 06662 (PKC)

---

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE THIRD, FOURTH, FIFTH, SIXTH, AND EIGHTH CAUSES OF ACTION IN <u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
(212) 506-1800 (Facsimile)
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ........................................................................ 1

**STATEMENT OF FACTS** .............................................................................. 3

    A.    The Oncura Business Model is Groundbreaking ................................... 3

    B.    Oncura's Success Attracts Analogic's Attention .................................. 4

    C.    After Analogic Acquires Oncura, it Fails to Follow Through on its
Promises ................................................................................................ 5

    D.    Despite the Barriers Put in Place by Analogic,  Oncura Thrives—and
Analogic Reacts .................................................................................... 5

    E.    Plaintiffs Fight Back and File Suit ....................................................... 6

**ARGUMENT** .................................................................................................. 6

I.     PLAINTIFFS HAVE PROPERLY PLEADED A CLAIM FOR FRAUD ...... 7

    A.    Plaintiffs' Fraud Claim is Not Precluded by Either the "Entire Agreement"
Clause or the No Reliance Clause in the Merger Agreement ................ 7

    B.    Plaintiffs' Fraud Claim is Not Precluded by a Specific Disclaimer .... 11

    C.    The Complaint is Replete with Actionable Misrepresentations or
Omissions ............................................................................................. 14

    D.    The Complaint Pleads Analogic's Fraudulent  Statements Were Made
Intentionally ........................................................................................ 15

II.    PLAINTIFFS HAVE PROPERLY PLEADED A CLAIM  FOR NEGLIGENT
MISREPRESENTATION ................................................................................ 18

III.   PLAINTIFFS HAVE PROPERLY PLEADED A CLAIM FOR BREACH OF
THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING .............. 22

IV.   PLAINTIFFS HAVE PROPERLY PLEADED A CLAIM  FOR UNJUST
ENRICHMENT ............................................................................................... 24

V.    PLAINTIFFS HAVE PROPERLY PLEADED THEIR DECLARATORY
JUDGMENT CLAIMS ................................................................................... 24

**CONCLUSION** ............................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1–10 Indus. Assoc. LLC v. Trim Corp. of Am.*,
   297 A.D.2d 630 (2d Dep't 2002) ........................................22

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
   910 F. Supp. 2d 543 (S.D.N.Y. 2012) ..................................19

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937) ..........................................................25

*In re Am. Int'l Grp., Inc. Deriv. Litig.*,
   700 F. Supp. 2d 419 (S.D.N.Y. 2010) ..................................18

*ARS Kabirwala, LP v. El Paso Kabirwala Cayman Co.*,
   No. 1:16-cv-6430-GHW, 2017 WL 3396422 (S.D.N.Y. Aug. 8, 2017) .................................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................7

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ...........................................10, 11

*Baena v. Woori Bank*,
   515 F. Supp. 2d 414 (S.D.N.Y. 2007) ..............................17, 18

*Barnet v. Drawbridge Special Opportunities Fund LP*,
   No. 14 cv 1376 (PKC), 2014 WL 4393320 (S.D.N.Y. Sept. 5, 2014) ...................16

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Group, Inc.*,
   115 A.D.3d 128 (1st Dep't 2014) ........................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................6

*Bell v. Ramirez*,
   13 Civ. 7916 (PKC) (HBP), 2017 WL 4296781 (S.D.N.Y. Sept. 26, 2017) ...........10

*Berger v. Scharf*,
   816 N.Y.S.2d 693, 2006 WL 825171 (Sup. Ct. N.Y. Cty. 2006) ...........................25

*Bibeault v. Advanced Health Corp.*,
   No. 97 Civ. 6026 (WHP), 2002 WL 24305 (S.D.N.Y. Jan. 8, 2002) ......................13

*Boart Longyear Ltd. v. Alliance Indus., Inc.*,
   869 F. Supp. 2d 407 (S.D.N.Y. 2012)............................................................................23, 24

*Bostany v. Trump Org. LLC*,
   901 N.Y.S.2d 207 (1st Dep't 2010) ........................................................................23

*Brinsights, LLC v. Charming Shoppes of Del., Inc.*,
   No. 06 Civ. 1745 (CM), 2008 WL 216969 (S.D.N.Y. Jan. 16, 2008) ....................................21

*Caiola v. Citibank, N.A. New York*,
   295 F.3d 312 (2d Cir. 2002)........................................................................................8

*Camofi Master LDC v. College Partnership, Inc.*,
   452 F. Supp. 2d 462 (S.D.N.Y. 2006) ...................................................................25

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)........................................................................................18

*Chrysler Capital Corp. v. Century Power Corp.*,
   778 F. Supp. 1260 (S.D.N.Y. 1991)..........................................................................24

*City of Perry v. Proctor & Gamble Co.*,
   188 F. Supp. 3d 276 (S.D.N.Y. 2016).......................................................................25

*Culinary Connection Holdings, Inc. v. Culinary Connection of Great Neck, Inc.*,
   1 A.D.3d 558 (2d Dep't 2003) ....................................................................................8

*Dalton v. Educ. Testing Serv.*,
   87 N.Y.2d 384 (1995) ................................................................................................22

*Danann Realty Corp. v. Harris*,
   5 N.Y.2d 317 (1959) ....................................................................................................8

*Dresner v. Utility.com, Inc.*,
   371 F. Supp. 2d 476 (S.D.N.Y. 2005) ................................................................10, 11

*Eaves v. Designs for Fin., Inc.*,
   785 F. Supp. 2d 229 (S.D.N.Y. 2011)...................................................................23, 24

*Emergent Capital Inv. Mgmt. LLC v. Stonepath Grp. Inc.*,
   343 F.3d 189 (2d Cir. 2003)....................................................................................10, 11

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004)........................................................................................16

*Fantozzi v. Axsys Techs., Inc.*,
   No. 07 CIV. 02667 (LMM), 2008 WL 4866054 (S.D.N.Y. Nov. 6, 2008) ......................23, 24

*GFRE, Inc. v. U.S. Bank, N.A.*,
  130 A.D.3d 569 (2d Dep't 2015) ......................................................................................24

*Goldman v. Metro. Life Ins. Co.*,
  5 N.Y.3d 561 (2005) ......................................................................................................24

*Greenberg v. Chrust*,
  198 F. Supp. 2d 578 (S.D.N.Y. 2002) ............................................................................20

*Harris v. Provident Life & Accident Ins. Co.*,
  310 F.3d 73 (2d Cir. 2002) .............................................................................................23

*Henneberry v. Sumitomo Corp. of Am.*,
  415 F. Supp. 2d 423 (S.D.N.Y. 2006) ............................................................................20

*Herbert H. Landy Ins. Agency, Inc. v. Navigators Mgmt. Co.*,
  No. 14 Civ. 6298 (LGS), 2015 WL 170460 (S.D.N.Y. Jan. 13, 2015) ...........................24

*Hi Tor Indus. Park, Inc. v. Chem. Bank*,
  114 A.D.2d 838 (2d Dep't 1985) ....................................................................................12

*Hosp. Auth. of Rockdale County v. GS Capital Partners V Fund, L.P.*,
  No. 09-CV-8716, 2011 WL 182066 (S.D.N.Y. Jan. 20, 2011) .......................................22

*HSH Nordbank AG v. UBS AG*,
  95 A.D.3d 185 (1st Dep't 2012) ...............................................................................12, 14

*Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*
  227 F.3d 8 (2d Cir. 2000) ...............................................................................................20

*Int'l Motor Sports Grp., Inc. v. Gordon*,
  98 Civ. 5611 (MBM), 1999 WL 619633 (S.D.N.Y. Aug. 16, 1999) ...............................11

*J&R Elecs. Inc. v. Bus. & Decision N. Am., Inc.*,
  12 cv 7497, 2013 WL 5203134 (S.D.N.Y. Sept. 16, 2013) ...........................................15

*JBCHoldings NY, LLC v. Pakter*,
  931 F. Supp. 2d 514 (S.D.N.Y. 2013) ............................................................................18

*Jordan v. Verizon Corp.*,
  No 08 Civ. 5414 (GEL), 2008 WL 5209989 (S.D.N.Y. Dec. 20, 2008) ..........................23

*Kelter v. Apex Equity Options Fund, L.P.*,
  08 cv 2911, 2009 WL 2599607 (S.D.N.Y. Aug. 24, 2009) .......................................10, 11

*Kimmell v. Shaefer*,
  89 N.Y.2d 257 (1996) .....................................................................................................20

*Kortright Capital Partners LP v. Investcorp Inv. Advisors Ltd.*,
    257 F. Supp. 3d 348 (S.D.N.Y. 2017)..............................................................20, 21

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991)..............................................................................18

*Laduzinski v. Alvarez & Marsal Taxand LLC*,
    132 A.D.3d 164 (1st Dep't 2015) ......................................................................8

*LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*,
    10 F. Supp. 3d 504 (S.D.N.Y. 2014)..................................................................19

*Litchhult v. USTRIVE2, Inc.*,
    No. 10-CV-3311 (JFB) (ARL), 2011 WL 3877084 (E.D.N.Y. Sept. 1, 2011)........16

*Lorely Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)..............................................................................10

*M & T Bank Corp. v. LaSalle Bank Nat'l Ass'n*,
    852 F. Supp. 2d 324 (W.D.N.Y. 2010) ..............................................................21

*Manufacturers Hanover Trust Co. v. Yanakas*,
    7 F.3d 310 (2d. Cir. 1993)..............................................................................9, 12

*Marine Midland Bank, N.A. v. Cafferty*,
    174 A.D.2d 932 (3d Dep't 1991) ......................................................................12

*Marshall v. Hyundai Motor Am.*,
    51 F. Supp. 3d 451 (S.D.N.Y. 2014)..................................................................25

*MBIA Ins. Corp. v Countrywide Home Loans, Inc.*,
    87 A.D.3d 287 (1st Dep't 2011) ..................................................................14, 15

*McBeth v. Porges*,
    171 F. Supp. 3d 216 (S.D.N.Y. 2016)..........................................................10, 11

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
    382 F. Supp. 2d 411 (S.D.N.Y. 2003)................................................................10

*Microtel Franchise & Dev. Corp. v. Country Inn Hotel*,
    923 F. Supp. 415 (W.D.N.Y. 1996) ..................................................................15

*Mitchell v. Diji*,
    134 A.D.3d 779 (2d Dep't 2015) ........................................................................7

*MTV Networks, a Div. of Viacom Int'l, Inc. v. Curry*,
    867 F. Supp. 202 (S.D.N.Y. 1994) ....................................................................19

*Murray v. Metro. Life Ins. Co.*,
    583 F.3d 173 (2d Cir. 2009)................................................................10

*Nasik Breeding & Res. Farm Ltd. v. Merck & Co.*,
    165 F. Supp. 2d 514 (S.D.N.Y. 2011)................................................12

*Nat'l Football League Props., Inc. v. Dallas Cowboys Football Club, Ltd.*,
    922 F. Supp. 849 (S.D.N.Y. 1996) ....................................................23

*Nechis v. Oxford Health Plans, Inc.*,
    421 F.3d 96 (2d Cir. 2005)..................................................................6

*Netologic, Inc. v. Goldman Sachs Grp., Inc.*,
    972 N.Y.S.2d 33 (1st Dep't 2013) ....................................................23

*North Star Contracting Corp. v. MTA Capital Constr. Co.*,
    120 A.D.3d 1066 (1st Dep't 2014) ....................................................21

*Orange Cty. Choppers, Inc. v. Olaes Enters., Inc.*,
    497 F. Supp. 2d 541 (S.D.N.Y. 2007)................................................22

*Organic Seed Growers & Trade Ass'n v. Monsanto Co.*,
    851 F. Supp. 2d 544 (S.D.N.Y. 2012)................................................25

*Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*,
    No. 08 Civ. 10578 (RJS), 2010 WL 1257326 (S.D.N.Y. Mar. 12, 2010) .............................25

*Primavera Familienstifung v. Askin*,
    130 F. Supp. 2d 450 (S.D.N.Y. 2001)............................................14, 15

*Rigney v. McCabe*,
    43 A.D.3d 896 (2d Dep't 2007) ........................................................12

*Robinson v. Deutsche Bank Trust Co. Americas*,
    572 F. Supp. 2d 319 (S.D.N.Y. 2008)............................................10, 13

*Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*,
    No. 11 Civ. 4362 (PKC), 2012 WL 1890388 (S.D.N.Y. May 23, 2012) ................................14

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)................................................................16

*Siegel v. Ford*,
    16-CV-8077 (JPO), 2017 WL 4119654 (S.D.N.Y. Sept. 15, 2017) .........................................9

*SOL Grp. Mktg. Co. v. Am. President Lines, Ltd.*,
    No 14-CV-9929 (SHS), 2016 WL 205444 (S.D.N.Y. Jan. 15, 2016) .....................................13

*Spread Enterprises, Inc. v. First Data Merchant Services Corp.*,
   No. 11-CV-4743 (ADS) (ETB), 2012 WL 3679319 (E.D.N.Y. Aug. 22, 2012)....................23

*Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*,
   798 N.Y.S.2d 348 (Sup. Ct. N.Y. Cty.) .................................................................21

*Stewart v. Jackson & Nash*,
   976 F.2d 86 (2d Cir. 1992)...................................................................................15

*Strategic Capital Dev. Grp., Ltd. v. Sigma-Tau Pharm., Inc.*,
   No. 97 Civ 2339 (RPP), 1998 WL 26191 (S.D.N.Y. Jan. 26, 1998).....................................16

*W. Intermodal Servs., Ltd. v. Singamas Container Indus. Co.*,
   No. 98 Civ. 8275 (RPP), 2000 WL 343780 (S.D.N.Y. Mar. 31, 2000)..................................19

*Warner Theatre Associates Ltd. v. Metropolitan Life Ins. Co.*
   149 F.3d 134 (2d Cir. 1998).................................................................................13

*Woods v. Maytag Co.*,
   807 F. Supp. 2d 112 (E.D.N.Y. 2011) ....................................................................17

*Yurish v. Sportini*,
   123 A.D.2d 760 (2d Dep't 1986) ..........................................................................12

*Zagami v. Cellceutix Corp.*,
   No. 15 Civ 7194 (KPF), 2016 WL 3199531 (S.D.N.Y. June 8, 2016)..................................18

**Statutes**

Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a) ...........................................24

**Other Authorities**

Rule 9(b) ..........................................................................................16, 17, 18

Rule 12(b)(1) ......................................................................................7, 25

Rule 12(b)(6).......................................................................................6, 18, 25

Rule 12(d) .........................................................................................18

Plaintiffs respectfully submit their opposition to Analogic Corporation ("Analogic") and Oncura Partners Diagnostics, LLC's ("Oncura") (collectively "defendants") partial motion to dismiss ("Mot.," ECF. No. 37) the First Amended Complaint ("Complaint" or "FAC").

## PRELIMINARY STATEMENT

This case presents a textbook example of a sale induced by fraud. After rejecting three offers by Analogic to buy Oncura, the plaintiffs' company, outright, plaintiffs finally agreed to accept partial consideration upfront in return for a four year unlimited earn-out which was projected to generate tens of millions of dollars in additional consideration with Analogic's financial backing behind Oncura. Dangling the carrot of a lucrative multi-million dollar payout, Analogic duped plaintiffs into agreeing to sell their business, Oncura, by representing it would provide new, state-of-the-art equipment by September 2017, a sizable sales force to sell that equipment, the full support of Analogic's marketing and accounting department, and the guarantee that Oncura's founders and executive leadership would remain in control of the company post-merger. But after the sale closed, plaintiffs slowly and painfully learned that they had fallen victim to Analogic's fraudulent scheme: Analogic would never sacrifice its own bottom-line by paying plaintiffs the millions they were promised, and only acquired Oncura to salvage the reputation of a CEO who was on his way out the door. Fresh off the heels of its most successful sales quarter ever, Analogic started to shut Oncura down by bringing in an inexperienced manager to harass and run off valuable employees, writing Oncura off its books completely and thereby recognizing a $10.2 million gain in future earn-out consideration, firing its entire salesforce and all of those plaintiffs who remained Oncura employees, and shuttering the company for good. With their future fortunes shattered and their former company in ruins, plaintiffs filed suit.

*First*, Analogic fraudulently induced plaintiffs into selling Oncura, and its motion to

dismiss does not deny that any of the foregoing assurances were false or immaterial—because it cannot.  Plaintiffs plead fraud with the requisite level of particularity by alleging that they were induced into accepting the promise of lucrative earn-out payments based on Analogic's pre-contractual representations that it never intended to honor.  Analogic tries —and fails—to dodge plaintiffs' fraud claim by claiming, without any support in the Complaint or Merger Agreement, that plaintiffs were "sophisticated" parties that were "represented by counsel" in connection with their negotiations for the sale of Oncura.  Further, it is well-settled and fatal to Analogic's argument that boilerplate and nonspecific general disclaimer and no-reliance clauses, such as those found in the Merger Agreement, cannot shield Analogic from the consequences of its fraud because such clauses fail to refer to the specific representations which were made to induce the merger in the first place.

*Second*, Analogic's attempt to dismiss the plaintiffs' negligent misrepresentation claim on the same grounds as the fraud claim fails as well.  Analogic is simply unable to sidestep the myriad statements of present fact that it knew or should have known were false when made to plaintiffs during the merger negotiations.  Plaintiffs and Analogic had the requisite special relationship, and the Complaint easily demonstrates it.  As Oncura's sole equipment supplier, Analogic was intimately familiar with Oncura and even represented itself as its partner in selling the equipment which Analogic manufactured.  This partnership was reinforced during merger negotiations when Analogic implored plaintiffs, on numerous occasions, to "trust" that Analogic would follow through on its promise to provide Oncura with the resources necessary for it to succeed following the merger.  And on top of that, the unique, specialized knowledge Analogic had with respect to its own products and whether it actually intended to move forward with supplying Oncura with equipment to sell after the merger, underscores plaintiffs' justification in

relying on Analogic's promises.  Analogic's attempt to dismiss plaintiffs' negligent misrepresentation claim, therefore, also fails.

*Third*, plaintiffs' claim in the alternative for a breach of the implied covenant of good faith and fair dealing—which is an implied covenant that exists in all contracts—is also adequately stated.  Plaintiffs alleged that even if Analogic engaged in conduct that was not expressly prohibited under the Merger Agreement in denying plaintiffs the opportunity to achieve their lucrative earn-out targets, such conduct was pretextual and beyond Analogic's rights under the Merger Agreement and done for the purpose of avoiding having to pay plaintiffs an unlimited amount of future compensation.

*Fourth*, plaintiffs' claims for unjust enrichment and declaratory judgment are also adequately pleaded.  It is hornbook law that a claim for unjust enrichment is proper where a party calls into question the validity of a contractual agreement through a claim for fraudulent inducement, which is exactly what plaintiffs have done here.  Plaintiffs have also identified various justiciable controversies, such as Analogic's announcement that it is going to sell its entire business including Oncura, which are ripe for determination by the Court.

Plaintiffs have adequately pleaded the challenged causes of action and defendants' partial motion to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

### A.    The Oncura Business Model is Groundbreaking

Oncura, which was founded by certain plaintiffs, was a veterinary medicine company that truly revolutionized animal treatment.  (FAC ¶ 1).  It did this by creating a paradigm shift in the way veterinary diagnostic imaging was handled by offering an affordable and efficient solution for clinicians to use complicated ultrasonography techniques—without any prior experience or training—as long as they had an ultrasound machine and a simple internet connection.  (*Id.* ¶ 56).

Oncura's product offerings provided for tremendous growth potential through three complimentary revenue streams.  It sold internet-enabled ultrasound equipment, provided a skilled team of sonographers to assist clinics in using that equipment, and it provided radiologists who could quickly and accurately diagnose and recommend treatment.  (*Id.* ¶¶ 53-56).

### B.  Oncura's Success Attracts Analogic's Attention

Analogic, the manufacturer and sole supplier of the ultrasound equipment sold by Oncura, recognized this potential.  (*Id.* ¶ 85).  Beginning in 2014, and over the course of more than a year, Analogic negotiated directly with certain plaintiffs to purchase Oncura.  (*Id.* ¶¶ 85-86).  By late 2015, Analogic and plaintiffs struck a deal and committed all of its terms into a comprehensive Merger Agreement.[1]  (*Id.* ¶ 100).

Although Analogic provided plaintiffs with upfront consideration of $6.2 million for the transaction, $2 million of which was put in escrow, plaintiffs stood to gain an unlimited amount of future consideration during a four year earn-out period based on Oncura's post-merger sales revenue performance, which Analogic modeled to be substantial.  (*Id.* ¶ 102).  The earn-out was a critical component of plaintiffs' decision to sell the company to Analogic.  (*Id.* ¶ 105).  In January of 2016, the transaction closed.  (*Id.* ¶ 100).  Plaintiffs were promised that Oncura would be provided with substantial resources to achieve and exceed the annual gross revenue targets contained in the Merger Agreement.  (*Id.* ¶¶ 87, 89, 91).  Those resources included a steady supply of equipment for resale; development of a new, state-of-the-art ultrasound machine (codenamed the "Calisto" (bk500)) that would allow Oncura to enter into the lucrative, equine marketplace for the first time; a team of sales personnel that would grow each year to blanket the country; the ability for certain plaintiffs to maintain managerial control over the company; and

---

[1] Capitalized and undefined terms used herein have the same meaning as those attributed in defendants' partial motion to dismiss (ECF No. 37) and the Complaint.

the commitment of Analogic's marketing and accounting department resources to ensure the company's steady growth was properly maintained. (*Id.* ¶¶ 53, 87-94, 155).

### C.   After Analogic Acquires Oncura, it Fails to Follow Through on its Promises

Plaintiffs would quickly find out that Analogic's empty promises were just lip service. Instead of providing Oncura with a steady supply of ultrasound equipment, Analogic placed an "end of life" designation on the only machine Oncura sold, and scrapped plans to introduce the Calisto (bk500) system. (*Id.* ¶¶ 127, 155). Although Analogic budgeted for Oncura to have 16 sales representatives, it never gave the approval to hire them all. (*Id.* ¶¶ 4, 9, 89, 118). Key plaintiffs were not given the opportunity to properly manage Oncura following the merger, and Analogic committed no marketing and only skeletal accounting resources to plaintiffs' former business. (*Id.* ¶¶ 4-5, 91 93, 99, 128, 155).

Yet despite the handicaps put in place, and while the plaintiffs who ran the business before the merger still exercised managerial control, Oncura thrived after the merger. (*Id.* ¶¶ 110-111, 117). But a successful Oncura placed Analogic in a predicament. On the one hand, Analogic's ultrasound segment was seeing substantial financial gains and began outpacing its other sectors. (*Id.* ¶¶ 110-111). On the other, Analogic would not be able to realize any benefit from those gains until after the earn-out period because of the potentially unlimited earn-out consideration it would owe to plaintiffs. (*Id.* ¶ 133). Recognizing that an unlimited earn-out would harm its own profitability, Analogic eventually pulled the plug on Oncura. (*Id.* ¶¶ 6, 110).

### D.   Despite the Barriers Put in Place by Analogic, Oncura Thrives—and Analogic Reacts

At the beginning of 2017, and fresh off the heels of Oncura's most successful sales quarter to date, Analogic began to dismantle Oncura by installing Jim Da Costa, who had no experience running a company like Oncura, as its general manager. (*Id.* ¶ 114). First, Da Costa

chased off valuable sales personnel through threats of the company's demise. (*Id.* ¶ 117).

Second, and even though Oncura had lined up qualified replacement candidates, both he and

Analogic refused to hire anyone. (*Id.* ¶ 118). Third, Da Costa publicly degraded employees in

an effort to destroy corporate morale. (*Id.* ¶¶ 120-121). Fourth, Da Costa distracted Oncura

employees from company business by forcing them to engage in menial, non-work related tasks

that absorbed considerable amounts of wasted time. (*Id.* ¶¶ 122-123). Eventually, and after

months of complaints to Analogic's human resources department and to its CEO, Fred Parks

("Parks"), Da Costa was removed, but the damage had already been done. (*Id.* ¶ 125).

### E. **Plaintiffs Fight Back and File Suit**

In the wake of Da Costa's aftermath, and after realizing Analogic was doing everything

in its power to cripple Oncura in order to prevent it from hitting the earn-out targets, plaintiffs

reached out to Parks in writing in April and May of 2017 to try to get Oncura back on track. (*Id.*

¶ 130). However, Analogic still refused to provide the resources it promised prior to the merger.

And, to add insult to injury, it fired all Oncura's sales employees without cause and booked a

$10.2 million gain on its consolidated financial statement for avoiding plaintiffs' earn-out

payments. (*Id.* ¶ 131). Left with no recourse, plaintiffs filed suit.

### ARGUMENT

Defendants' motion to dismiss the third, fourth, fifth, sixth, and eighth causes of action

stated in the Complaint should be denied as plaintiffs have properly pleaded those claims.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state

a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). The Court must accept as true "all well-pleaded facts" and view them in the light most

favorable to plaintiff. *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). A

claim has facial plausibility where the plaintiff "pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Because plaintiffs have properly stated claims in their third, fourth, fifth, sixth, and eighth causes of action, and because the eighth cause of action is justiciable under Rule 12(b)(1), defendants' motion should be denied.

## I.   PLAINTIFFS HAVE PROPERLY PLEADED A CLAIM FOR FRAUD

The Complaint describes, in detail, the fraudulent scheme employed by Analogic to induce plaintiffs to sell Oncura.  Analogic knew that its statements were false at the time they were made, and the three so-called "disclaimer" provisions which Analogic brandishes as a shield against liability do not negate plaintiffs' reliance.

Under New York law, a claim for fraudulent inducement is adequately stated by pleading that the defendant: (1) made a material misrepresentation of existing fact; (2) with knowledge of its falsity and with the intent of deceiving the plaintiff; (3) the plaintiff justifiably relied on the misrepresentation; and (4) the plaintiff suffered damages as a result.  *Mitchell v. Diji*, 134 A.D.3d 779, 780 (2d Dep't 2015).  Contrary to Analogic's arguments, plaintiffs easily meet this standard by pleading Analogic made material misrepresentations of existing fact (*see e.g.*, FAC ¶¶ 85-99, 153-155), knowing they were untrue at the time they were made (*see e.g., id.* ¶¶ 87-93, 126-133, 154), with the intent to induce plaintiffs to sell Oncura and to induce the Key Employees to enter into the Key Employment Agreements (*Id.* ¶¶ 6, 100, 160), and plaintiffs justifiably relied on such misrepresentations to their detriment.  (*Id.* ¶¶ 133, 134-138, 162).

### A.   Plaintiffs' Fraud Claim is Not Precluded by Either the "Entire Agreement" Clause or the No Reliance Clause in the Merger Agreement

The boiler-plate "entire agreement" provision in the Merger Agreement and a statement made in one of its exhibits encouraging plaintiffs to sign the agreement do not exculpate

Analogic's fraud.  The generic "entire agreement" clause in Section 13.2 of the Merger

Agreement, which Analogic places considerable weight on, is a boilerplate clause:

> 13.2   Entire Agreement.  This Agreement (including the documents and
> instruments referred to herein) constitutes the entire agreement among the parties
> to this Agreement and supersedes any prior understandings, agreements or
> representations by or among the parties hereto, or any of them, written or oral,
> with respect to the subject matter hereof. . .

(Mot. Ex. 1, ECF 38-1, at 85).  Similarly generic, the Merger Agreement's Information

Statement, which functions as a layman's summary of the terms of the Merger Agreement itself

for the benefit of the plaintiffs in determining whether to sell Oncura, states as follows:

> This Information Statement summarizes certain information, which is set
> forth more fully in the Exhibits hereto.  This Information Statement is qualified in
> its entirety by reference to such Exhibits (including the terms of the Merger
> Agreement), each of which Exhibits you should read carefully and in their
> entirety. You should not rely on any information or statements that are not
> contained in this Information Statement or the Exhibits hereto.

(*Id.* at 185-86).  It is well settled that general disclaimer provisions such as these are ineffective

to bar claims for fraudulent inducement.  *See Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320

(1959); *Laduzinski v. Alvarez & Marsal Taxand LLC*, 132 A.D.3d 164, 168-89 (1st Dep't 2015)

(finding disclaimer provision that "[t]his Agreement constitutes the entire agreement between the

parties with respect to subject matter and supersedes all previous understandings,

representations, commitments, or agreements, oral or written," was boilerplate and too general to

bar particular misrepresentations in complaint).  Instead, for a merger or "no reliance" clause to

be effective, the clause must "refer to the particular subject matter as to which the representations

are alleged with sufficient specificity" to put the party on notice as to the clause's intended

effect. *Culinary Connection Holdings, Inc. v. Culinary Connection of Great Neck, Inc.*, 1

A.D.3d 558, 559 (2d Dep't 2003); *see also Caiola v. Citibank, N.A. New York*, 295 F.3d 312, 330

(2d Cir. 2002) ("[A] valid disclaimer provision must contain explicit disclaimers of the

*particular* representations that form the basis of the fraud claim.") (internal quotation marks and citation omitted) (emphasis added).  The disclaimers here contain no specific reference to representations plaintiffs' claim were fraudulent and do not operate to bar them.

Additionally, Analogic's contention that plaintiffs are sophisticated individuals who were represented by counsel during their negotiations with Analogic (Mot. at 8-9) —and therefore the boilerplate disclaimer provisions discussed above are sufficient to bar plaintiffs' fraud claim as a result—is unsupported by the language of the Complaint and the Merger Agreement itself.  That some plaintiffs—but not all—had developed successful careers in veterinary sales from managerial positions is not the equivalent of having extensive experience buying and selling businesses like Oncura such that they could be considered "sophisticated."  (*See* FAC ¶¶ 47-51); *see also Siegel v. Ford*, 16-CV-8077 (JPO), 2017 WL 4119654, at *11 (S.D.N.Y. Sept. 15, 2017) ("[p]laintiffs may be sophisticated investors, but that does not make them sophisticated engineers.").  Aside from claims that plaintiffs are sophisticated, there is absolutely no support for Analogic's claim that plaintiffs were represented by counsel during the merger negotiations.[2] (*See generally*, FAC).  In any event, whether a party to a transaction is sophisticated and represented by counsel are merely factors used to gauge a plaintiff's reasonable reliance on misrepresentations.  *See Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d. Cir. 1993) (noting that merger provisions seek to disclaim reliance on extra-contractual representations).  Reliance requires a fact-intensive inquiry which is not appropriately addressed

---

[2] Analogic argues that plaintiffs were represented by the undersigned law firm during the Pre-Merger Period, and cite to Section 13.1(b) of the Merger Agreement as support.  (Mot. at 8-9).  But Section 13.1(b)—a contractual "Notice" provision—says nothing of the sort.  Instead, that provision recognizes Kasowitz Benson Torres LLP (f/k/a Kasowitz, Benson, Torres & Friedman LLP) as counsel for *Oncura* and only for the period of time prior to the Effective Date of merger.  (*See* Mot. Ex. 1, ECF 38-1, at 84-85).  In fact, in that same section, no attorneys are listed to receive notice for "any Holder or the Seller Representative"—plaintiffs herein.  (*Id.* at 85).  Instead, under the Information Statement, the "Holders" and the "Seller Representative" were invited to *seek* legal counsel to aid in their consideration of whether to sell their interest in Oncura.  (*Id.* at 182).

by motion to dismiss.  *Lorely Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 186, n.19 (2d Cir. 2015) (describing assessment of reasonable reliance as "nettlesome" and "fact-intensive," and not usually appropriate to support dismissal at the pleading stage.). Because there is no support for Analogic's bald assertions that plaintiffs are sophisticated and were represented by counsel during the merger negotiations, Analogic's argument that the Section 13.2 "entire agreement" clause and the language from the Merger Agreement's information statement functions to disclaim plaintiffs' reliance fails.[3]

However, assuming *arguendo* that Analogic's unsupported assertion that plaintiffs are sophisticated and were represented by counsel during the Oncura merger negotiations is true, those factors alone are insufficient to bar the plaintiffs' fraud claims because disclaimers at issue do not relate to the subject matter of the misrepresentations which are alleged as fraudulent.  *See Robinson v. Deutsche Bank Trust Co. Americas*, 572 F. Supp. 2d 319, 324 (S.D.N.Y. 2008) (refusing to dismiss fraud claim where, despite presence of a merger provision, "the subject matter of the [fraudulent] representation" was not set forth in the contract itself); *see also Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 382 F. Supp. 2d 411, 418 (S.D.N.Y. 2003) (same).  Nor do the cases cited by Analogic support its position.  Analogic's reliance on *Kelter v. Apex Equity Options Fund, L.P.*, 08 cv 2911 (NRB), 2009 WL 2599607 (S.D.N.Y. Aug. 24, 2009), *McBeth v. Porges*, 171 F. Supp. 3d 216 (S.D.N.Y. 2016), *Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476 (S.D.N.Y. 2005), *Emergent Capital Inv. Mgmt. LLC v. Stonepath Grp. Inc.*, 343 F.3d 189 (2d Cir. 2003), and *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) for

---

[3] Defendants' threat to move to disqualify plaintiffs' counsel, Constantine Pamphilis (Mot. at 9, n.8), is nothing more than a litigation tactic of the type which Courts routinely caution against, and one which courts in the Second Circuit recognize is readily abused and subject to strict scrutiny upon review.  *See Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 179 (2d Cir. 2009); *see also Bell v. Ramirez*, 13 Civ. 7916 (PKC) (HBP), 2017 WL 4296781, at *1 (S.D.N.Y. Sept. 26, 2017).  This improper attack, which was raised for the first time in the Motion to Dismiss, is not currently before the Court.

the proposition that a general merger/no reliance clause is sufficient to disclaim reliance by the plaintiffs is unavailing, and each case is easily distinguishable for the exact same reasons. Specifically, each of those cases involve sophisticated *investors* or *business people*, many of whom were represented by counsel who were highly experienced in complex commercial transactions. *See Kelter*, 2009 WL 2599607, at *8 (sophisticated investor signing investment agreement); *McBeth*, 171 F. Supp. 3d at 226 (same); *Dresner*, 371 F. Supp. 2d at 492 (sophisticated business people advised by sophisticated counsel); *Emergent*, 343 F.3d at 196 (sophisticated investor); *ATSI Communications*, 493 F.3d at 105 (same). Here, and unlike the cases cited by Analogic, there are no facts to support that plaintiffs are sophisticated investors or even sophisticated businessmen and businesswomen. The motion to dismiss on the basis of the general "entire agreement" clause and the language in the information statement must be denied.

### B.    Plaintiffs' Fraud Claim is Not Precluded by a Specific Disclaimer

Analogic's "Right to Operate" is not a "specific disclaimer" (Mot. at 10-12) which exculpates it for fraud, and it bears no resemblance to a disclaimer of fraud, general or specific. It provides, in part:

> (f)     By their adoption of this Agreement, the Holders agree and acknowledge that the Buyer has the right to operate its business (including, after the Closing, the business of the Company) in a manner consistent with the best interest of the consolidated business operations of the Buyer and its subsidiaries, taken as a whole (the "Right to Operate"). In exercising the Right to Operate, the Buyer may from time to time make business decisions that may have an impact on GAAP Revenue, Gross Margin, and/or any Earn-Out Payment.

(Mot. Ex. 1, ECF 38-1, at 20). To be clear, "[a] specific disclaimer typically consists of a clause stipulating that the parties are not 'relying' upon *specified*, extra-contractual representations." *Int'l Motor Sports Grp., Inc. v. Gordon*, 98 Civ. 5611 (MBM), 1999 WL 619633, at *6 (S.D.N.Y. Aug. 16, 1999) (citing *O'Hearn v. Bodyonics, Ltd.*, 22 F. Supp. 2d 7, 13 (E.D.N.Y. 1998) (emphasis in original). The clause "must contain *explicit* disclaimers of the *particular*

11

representations that form the basis of the [fraud] claim." *Id.* (citing *Yanakas*, 7 F.3d at 316 (2d Cir. 1993) (emphasis in original). The plain language of this provision contains no *explicit* disclaimer of *particular* representations. Section 2.9(f) fails to explicitly disclaim plaintiffs' reliance on Analogic's representations pertaining to, for example, (1) the availability of the Calisto (bk500) in September 2017, and the continued production of equipment in general (FAC ¶¶ 87-88); (2) operations and management (*Id.*); (3) working capital uses (*Id.*);  and (4) the accounting, marketing, and sales personnel necessary to sell Oncura's products.  (*Id.* ¶¶ 91-92); *see Hi Tor Indus. Park, Inc. v. Chem. Bank*, 114 A.D.2d 838, 839 (2d Dep't 1985) (holding phrases "physical nature of premises" and "environmental matters" insufficiently specific to disclaim reliance on statements related to underground tanks containing alleged toxic chemicals).

Analogic's argument that the "right to operate" provision serves as a specific disclaimer is therefore wholly misplaced.  That provision is prospective and simply confirms the obvious: Analogic, as the new owner of Oncura, had the right to operate the company after it bought it.  It concerns events which were to occur *after* the Merger Agreement was executed, not statements made *prior*, and makes no mention of pre-contract representations or warranties.[4]

Even if plaintiffs' allegations come within the terms of a disclaimer or merger/integration clause (they do not), plaintiffs' fraud claims survive because plaintiffs relied on misstatements concerning facts peculiarly within Analogic's knowledge.  *See Basis Yield Alpha Fund (Master) v. Goldman Sachs Group, Inc.*, 115 A.D.3d 128, 139 (1st Dep't 2014) (specific disclaimer does not preclude reliance where the facts are peculiarly within the defendant's knowledge); *Yurish v.*

---

[4] Analogic's reliance on *Marine Midland Bank, N.A. v. Cafferty*, 174 A.D.2d 932 (3d Dep't 1991), *Rigney v. McCabe*, 43 A.D.3d 896 (2d Dep't 2007), *HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185 (1st Dep't 2012), and *Nasik Breeding & Res. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514 (S.D.N.Y. 2011), is misplaced, as each decision involved specific disclaimers or agreements which disclaim or otherwise actually address the specific representations making up the fraud claims in those actions.  In addition, *Cafferty* and *Nasik* involved fully-developed records, while *Rigney* is a two paragraph decision completely devoid of analysis.  In contrast, and for the reasons stated herein, the "Right to Operate" provision in Section 2.9(f) disclaims absolutely nothing.

*Sportini*, 123 A.D.2d 760, 762 (2d Dep't 1986) (refusing to dismiss fraud claim where plaintiff "had virtually no way of confirming what the [defendant] told" the plaintiff). Contrary to Analogic's assertions, plaintiffs adequately plead the peculiar knowledge exception in a non-conclusory fashion: for example, that Analogic possessed peculiar, non-public information with respect to their ultrasound equipment (FAC ¶¶ 3, 53, 87, 88) because such information consisted of "closely held secrets" as further evidenced by the fact that its new equipment was supposedly being developed under a code name (*Id.* ¶ 53), that Analogic intended to place Farley Peechatka ("Peechatka") at the helm of Oncura following the merger and not certain of plaintiffs (*Id.* ¶ 93), and that Analogic's budget and available resources was not publicly available. (*Id.* ¶ 4). Further, plaintiffs adequately pleaded that Analogic held peculiar, non-public knowledge with respect to Analogic's intent, at the time the statements were made, to not provide the resources that it promised it would for Oncura's post-merger success. (*Id.* ¶¶ 4, 8, 89, 91, 100, 160-61).[5] In any event, and as set forth previously herein, "[w]hether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss." *See Robinson*, 572 F. Supp. 2d at 322 (quoting *Staleman v. Fleishman-Hillard, Inc.*, 02 Civ. 8318, 2003 WL 21782645, at *7 (S.D.N.Y. July 31, 2003)).

---

[5] Analogic improperly relies on *Warner Theatre Associates Ltd. v. Metropolitan Life Ins. Co.* 149 F.3d 134, 136 (2d Cir. 1998), *SOL Grp. Mktg. Co. v. Am. President Lines, Ltd.*, No 14-CV-9929 (SHS), 2016 WL 205444, at *6 (S.D.N.Y. Jan. 15, 2016); *Bibeault v. Advanced Health Corp.*, No. 97 Civ. 6026 (WHP), 2002 WL 24305, at *5 (S.D.N.Y. Jan. 8, 2002), cases which, unlike here, contained specific disclaimers and sophisticated parties, to summarily argue that plaintiffs cannot rely on the peculiar knowledge exception because "plaintiffs could have insisted on the 'low cost alternative' that the Merger Agreement explicitly require Analogic to provide Oncura with specified products, personnel, and resources." (Mot. at 12). However, *Warner Theatre* made clear that, "unlike the typical case involving the peculiar knowledge exception, the subject of the alleged misrepresentation . . . was not so much a fact going to the value of the negotiation agreement as it was a matter going to the terms of that agreement." *Warner Theatre*, F.3d at 136. Unlike *Warner Theatre, SOL Group*, and *Bibeault*, the misrepresentations here go directly to the value of the transaction because, without Analogic's representations about the "specified products, personnel, and resources" (Mot. at 12) being true, plaintiffs would not have agreed to sell Oncura in the first place.

C.     **The Complaint is Replete with Actionable Misrepresentations or Omissions**

Plaintiffs have properly pleaded that Analogic's misrepresentations were present statements of material fact which were collateral to the contract and, indeed, were the reason that plaintiffs entered into the contract in the first place.  Plaintiffs have pleaded, with particularity, that Analogic made numerous, collateral, pre-contractual misrepresentations, knowing they were untrue at the time they were made (FAC ¶¶ 87-91), that were not included in the Merger Agreement and are not part of plaintiffs' breach of contract claims.[6]  In any event, the mere fact that the same circumstances that make up plaintiffs' fraud claim also help to support plaintiffs' breach of contract claims is insufficient, as a matter of law, to warrant the dismissal of a fraud claim as duplicative.  *See MBIA Ins. Corp. v Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 293-94 (1st Dep't 2011) (fraud claim not barred despite involving same facts as breach of contract claim).

Here, plaintiffs allege that Analogic made false statements of present facts (knowing they were untrue at the time they were made) in order to, and which did, induce plaintiffs to sell Oncura to Analogic and enter into Key Employment Agreements with defendants.  *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 491 (S.D.N.Y. 2001), *abrogated on other grounds*, *Casey v. Merck & Co.*, 653 F.3d 95 (2d Cir. 2011) (fraud claims are viable where plaintiff pleads facts that defendant "never intended to carry out its alleged promise.").  For example, Analogic misrepresented that (1) it would have equipment to sell and would provide Oncura with new equipment by September 2017, and reassured plaintiffs by stating that Analogic was in the manufacturing business and "why would that ever change?" (FAC ¶¶ 89-91,

---

[6] Analogic's reliance on *HSH Nordbank AG*, 95 A.D.3d at 206 supports plaintiffs' position.  That case makes clear that "[a] claim for fraudulent inducement of a contract *can be predicated upon an insincere promise of future performance*" where the false promise is collateral to a contract, which plaintiffs allege here.  *Id.* (emphasis added).  For this same reason, *Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11 Civ. 4362 (PKC), 2012 WL 1890388, at *6 (S.D.N.Y. May 23, 2012), which Analogic cites for the same proposition, is distinguishable.

92); (2) Oncura would have the resources which it needed to expand its business post-merger, including a specific number of sales and accounting personnel (*Id.* ¶¶ 89, 91); and (3) that those of the plaintiffs who founded Oncura would direct the operations of Oncura post-merger as the CEO, President and Medical Director, and Director of Sales, respectively, in order to maintain continuity post-merger (*Id.* ¶ 93).  There are no provisions in the Merger Agreement which concern these representations, and Analogic knew the statements were untrue at the time they were made. (*Id.* ¶¶ 87, 91-92); *see J&R Elecs. Inc. v. Bus. & Decision N. Am., Inc.*, 12 cv 7497 (PKC), 2013 WL 5203134, at *8 (S.D.N.Y. Sept. 16, 2013) (Castel, J.) (refusing to dismiss tort claim as duplicative of breach of contract claim where present facts were included in complaint); *MBIA Ins. Corp.*, 87 A.D.3d at 294; *Primavera Familienstiftung*, 130 F. Supp. 2d at 491 (refusing to dismiss fraud claim as duplicative of breach of contract claim where plaintiff pleaded that defendant represented it would, but never intended to, use "broker marks" to value securities *in the future*).[7]  Accordingly, plaintiffs' fraud claims are distinct from their breach of contract claims and, Analogic's motion to dismiss on this basis should therefore be denied.

### D.   The Complaint Pleads Analogic's Fraudulent Statements Were Made Intentionally

Plaintiffs have properly pleaded that Analogic's fraudulent statements were false when made and with the requisite fraudulent intent.  Analogic's argument to the contrary (Mot. at 14) misunderstands the applicable standard and the facts actually pleaded in the Complaint.  Though the fraudulent representations in the Complaint were all statements of present fact, the Second Circuit has long recognized that even false promises of future actions support claims for fraud. *Stewart v. Jackson & Nash*, 976 F.2d 86, 90-90 (2d Cir. 1992).  "And, in determining whether

---

[7] Analogic's reliance on *Microtel Franchise & Dev. Corp. v. Country Inn Hotel*, 923 F. Supp. 415, 417 (W.D.N.Y. 1996) is therefore misplaced.  In *Microtel*, the fraudulent misrepresentations contained in the defendant's counterclaim were explicitly contained in the terms of the contract at issue, thus justifying dismissal.  *Id.* Unlike *Microtel*, Analogic's fraudulent misrepresentations were not included in the Merger Agreement.

fraud has been pled with sufficient particularity, a court must read the complaint generously, and draw all inferences in favor of the plaintiff." *Barnet v. Drawbridge Special Opportunities Fund LP*, No. 14 cv 1376 (PKC), 2014 WL 4393320, at *11 (S.D.N.Y. Sept. 5, 2014) (Castel, J.). Under Rule 9(b), plaintiffs are required to (1) specify the fraudulent statements, (2) identify their speakers, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.[8] *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127-28 (2d Cir. 1994). Defendants dispute only the fourth element.

In addition to being replete with actionable statements of fraud (*see* discussion at 1(C), *supra*), the Complaint also explains why each of those statements was false when made. Unlike the unsupported allegations of fraud in *Litchhult v. USTRIVE2, Inc.*, No. 10-CV-3311 (JFB) (ARL), 2011 WL 3877084, at *6 (E.D.N.Y. Sept. 1, 2011), plaintiffs' affirmatively plead, for example, that they were defrauded when Analogic refused to permit Key Employees to manage Oncura post-merger by passing over them in favor of Peechatka and Da Costa (FAC ¶¶ 107, 114) and were promised a steady supply of ultrasound equipment to sell but then discontinued those products and scrapped plans for the Calisto (bk500) despite being Oncura's exclusive product supplier, solidifying plaintiffs' inability to enter the equine market and to achieve their earn-out (*Id.* ¶¶ 53, 127). Analogic's conclusory argument to the contrary is without merit.[9]

The Complaint also alleges facts that give rise to a strong inference of fraudulent intent. Given the inherent difficulties in proving intent (especially in advance of any discovery), "[m]alice, intent, knowledge, and other conditions of a person's mind *may be alleged generally*."

---

[8] By failing to brief it in their Motion, Analogic concedes plaintiffs have adequately pleaded factors (1) through (3).

[9] For these reasons, Analogic's reliance on *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) is misplaced, as plaintiffs have not simply alleged that Analogic failed to perform as promised. Further, despite citing to *Strategic Capital Dev. Grp., Ltd. v. Sigma-Tau Pharm., Inc.*, No. 97 Civ. 2339 (RPP), 1998 WL 26191, at *4 (S.D.N.Y. Jan. 26, 1998), Analogic fails to discuss any portion of that decision, let alone one which supports its conclusory argument that plaintiffs failed to plead fraud under Rule 9(b). (Mot. at 14).

Fed. R. Civ. P. 9(b) (emphasis added).  This is necessary "for the simple reason that a 'plaintiff realistically cannot be expected to plead a defendant's actual state of mind.'"  *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011) (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996)).  For that reason, courts only require facts that give rise to a "strong inference" of fraudulent intent, which may be based on either allegations of defendants' motive and opportunity to commit fraud, or allegations constituting strong circumstantial evidence of misbehavior or recklessness.  *Woods*, 807 F. Supp. 2d at 120.  Plaintiffs easily meet the requirement for pleading intent under Rule 9(b).  Through Parks' statements that the Oncura purchase was "sexy" and that "companies are bought for shareholders and the story" (FAC ¶ 113); that Analogic should have never purchased Oncura (*Id.*); that "we need to give this to Jim Green, it's little money and he needs this win," to Analogic's Board of Directors pre-merger; (*Id.*); and that Analogic should have never acquired Oncura and did so in an attempt to salvage former CEO Green's legacy and to use its patent-pending process for human applications in the process (*Id.* ¶ 133), plaintiffs have not only generally alleged Analogic's intent to commit fraud, but also its motive and opportunity to do so (by shutting Oncura down to avoid paying plaintiffs considerable payments under the Earn-Out provision for a company it never wanted to purchase in the first place).  (*Id.*).

Yet without citing any authority, Analogic improperly fixates on the argument that plaintiffs do not plead facts that "show[] that at the time the challenged statements were made defendants did not actually intend" to abide by its pre-contractual representations.  (Mot. at 14).  "But subsequent acts, depending on their kind and character, may shed light on a defendant's intent at an earlier time."  *See Baena v. Woori Bank*, 515 F. Supp. 2d 414, 421 (S.D.N.Y. 2007) (Castel, J.).  Parks' statements to certain plaintiffs after the merger therefore shed light on

Analogic's pre-merger fraudulent intentions.  Additionally, Analogic's unsupported argument

that "Plaintiffs allege no facts to defeat" a different "more plausible inference" is entirely

contrary to the law.  "Rule 9(b) does not require that the facts alleged compel only one possible

conclusion . . . it is sufficient if the facts give rise to a strong inference of fraudulent intent," as

plaintiffs have done throughout the Complaint.  *Baena*, 515 F. Supp. 2d at 422.[10]

The scheme alleged in the Complaint is exceedingly simple and Analogic's motive and

opportunity clear: Analogic acquired Oncura in order to save the reputation of Jim Green, its

soon-to-be-ousted CEO.  (FAC ¶ 133).  Once Green was terminated, Analogic's new CEO Parks

sought to rid itself of Oncura and its successes in order to avoid paying potentially unlimited

earn-out payments.[11]  *Id*.  Because plaintiffs have exceeded Rule 9(b)'s pleading requirements,

Analogic's motion to dismiss should be denied.

## II.   PLAINTIFFS HAVE PROPERLY PLEADED A CLAIM
##       FOR NEGLIGENT MISREPRESENTATION

Plaintiffs' negligent misrepresentation claim is also properly pleaded and Analogic's

attempts to dismiss it fail for the same reasons set forth above and because plaintiffs have

pleaded the existence of a special relationship of trust between the parties.  In order to state a

claim for negligent misrepresentation, a plaintiff must plead that: (1) the defendant had a duty, as

a result of a special or privity-like relationship, to give it correct information; (2) the defendant

made a false representation that he should have known was incorrect; and (3) reasonable reliance

---

[10] Plaintiffs request pursuant to Rule 12(d) that the Court exclude in its entirety defendants' Exhibit 5 (Mot. Ex. 5, ECF 38-5) from the Court's consideration.  Defendants' argument (Mot. at 16, n.11) that courts readily consider Forms 10-K in deciding Rule 12(b)(6) motions is misleading.  Judicial notice of required disclosure documents filed with the SEC is only proper in actions in which a complaint alleges misrepresentations or misstatements are contained therein.  *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  This is not such a case, and renders defendants' reliance on *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002), *Zagami v. Cellceutix Corp.*, No. 15 Civ. 7194 (KPF), 2016 WL 3199531, at *5 (S.D.N.Y. June 8, 2016), and *In re Am. Int'l Grp., Inc. Deriv. Litig.*, 700 F. Supp. 2d 419, 443-44 (S.D.N.Y. 2010) is misguided because plaintiffs did not "rel[y] heavily upon [the] terms and effect" of Exhibit 5.

[11] Thus, unlike here, *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 533-34 (S.D.N.Y. 2013), which found a complaint lacking any plausible motive for the fraud allegations contained therein, is inapposite.

on that information.  *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 910 F. Supp. 2d

543, 546 (S.D.N.Y. 2012).  Plaintiffs easily meet this standard by pleading the parties had a

special relationship requiring Analogic to provide plaintiffs with accurate information (FAC ¶¶

92, 101, 164), that Analogic nevertheless made misrepresentations (*see e.g., id.* ¶¶ 85-99, 166)

that it knew or should have known were incorrect (*see e.g.*, *id.* ¶¶ 87-93, 126-133,170), and

plaintiffs relied on such misrepresentations (*Id.* ¶¶ 88-91, 98-99, 172-173) to their detriment. (*Id.*

¶¶ 133, 134-138, 174).  Analogic's arguments to the contrary fail for three independent reasons.

First, for the reasons described above in Section I(A)-(C) above, plaintiffs' reasonable

reliance on Analogic's misrepresentations has not been negated because the alleged disclaimers

are not sufficiently specific and, moreover, a disclaimer cannot disclaim representations that are

peculiarly within the defendant's knowledge.[12]  *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*,

10 F. Supp. 3d 504, 517-18 (S.D.N.Y. 2014) (refusing to dismiss negligent misrepresentation

claim where disclaimer was not specific and where information was within defendant's peculiar

knowledge).  And, in any event, plaintiff "need only plead that he relied on misrepresentations

made by the defendant since the reasonableness of his reliance implicates factual issues whose

resolution would be inappropriate at [the pleading] stage."  *See MTV Networks, a Div. of Viacom

Int'l, Inc. v. Curry*, 867 F. Supp. 202, 207 (S.D.N.Y. 1994).

Second, for the reasons described above in Section I(A)-(C), the statements which form

the basis of plaintiffs' negligent misrepresentation claim are not mere statements of future

expectations or non-actionable forward looking predictions.  Instead, plaintiffs allege that

Analogic made statements which they knew or should have known were false when made, and

are thus actionable.  (*See e.g.*, FAC ¶¶ 87-93, 126-133,170).  Statements made with a degree of

---

[12] Thus, Analogic's parenthetical reliance on *W. Intermodal Servs., Ltd. v. Singamas Container Indus. Co.*, No. 98
Civ. 8275 (RPP), 2000 WL 343780, at *3 (S.D.N.Y. Mar. 31, 2000), which dismissed negligent misrepresentation
claims for lack of justifiable reliance, is  misplaced.

definiteness and which indicate a then-present intention to take or not take action support claims for negligent misrepresentation. *Kortright Capital Partners LP v. Investcorp Inv. Advisors Ltd.*, 257 F. Supp. 3d 348, 357 (S.D.N.Y. 2017) (finding statement that party was able to proceed with a transaction was one of present intent). *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, which Analogic relies on for its argument, confirms that plaintiffs' allegations are different from non-actionable "future expectation" statements.[13]  227 F.3d 8, 20-21 (2d Cir. 2000).  In *Hydro*, the Second Circuit held that statements regarding future predictions of energy output were not actionable because they were merely forward looking *predictions*.  *Id*.  Here, on the other hand, plaintiffs allege that Analogic made statements of present fact knowing they were untrue at the time they were made (e.g., that the Calisto (bk500) will be provided to Oncura in September 2017 (FAC ¶ 87), when Analogic knew such a statement was untrue).  (*Id.* ¶ 127).  Analogic's argument to the contrary is without merit.

Third, plaintiffs plead that they had a special relationship with Analogic.  *Kimmell v. Shaefer*, 89 N.Y.2d 257, 264 (1996); *Kortright*, 257 F. Supp. 3d at 358.[14]  During two separate pre-merger meetings in Fort Worth and Austin, Texas, Analogic representatives, and specifically Da Costa, implored plaintiffs to "trust" them that Analogic would provide Oncura with the necessary sales force, marketing personnel, accounting personnel and equipment (even showing plaintiffs Presnall, Huber, and Rushing renderings of the Calisto (bk500) to make it appear as though it was progressing in its development).  (FAC ¶ 92).  Analogic told plaintiffs that it would allow Oncura to continue to thrive after closing, or else the deal would not work.  (*Id.*).  And

---

[13] For these same reasons, *Greenberg v. Chrust*, 198 F. Supp. 2d 578, 584 (S.D.N.Y. 2002) and *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 453 (S.D.N.Y. 2006) do not support defendants' contrary arguments.

[14] Contrary to Analogic's assertion (Mot. at 20), the pre-merger Confidentiality Agreement—which is, plainly, an agreement between *Oncura* (not plaintiffs) and *Analogic*—is inapplicable here.  (*See generally*, Mot. Ex. 3, ECF 38-3).  And in all events, that agreement is entirely silent as to disclaiming special relationships or relationships of trust between its signatories.  (*See id.*).

Analogic had special knowledge with respect to the capabilities and availability of equipment for Oncura as Oncura's exclusive provider.  (*Id.* ¶ 53).  Oncura therefore relied on Analogic to design ultrasound equipment for Oncura's customers and to provide the software and support for the technical operation of those systems.  (*Id.*).  Furthermore, like the parties in *Kortright*, plaintiffs and Analogic had a closer degree of trust than an ordinary buyer and seller.  *Kortright*, 257 F. Supp. 3d at 358.  Specifically, like in *Kortright*, plaintiffs have pleaded that Analogic had access to Oncura's pre-merger and non-public sales revenue and, moreover, that Analogic "held itself out as Oncura's 'partner'."  (FAC ¶ 101); *Kortright*, 257 F. Supp. 3d at 358-59 (finding special relationship in transactional setting where defendant held itself out as plaintiff's partner and had access to its financials).[15]  Under these circumstances, New York courts have routinely found the requisite special relationship for negligent misrepresentation satisfied.  *See North Star Contracting Corp. v. MTA Capital Constr. Co.*, 120 A.D.3d 1066, 1068-71 (1st Dep't 2014) (finding special relationship existed where the defendant had unique and specialized knowledge with respect to the suitability of a material being used for a construction project).[16]  Plaintiffs have therefore adequately pleaded a claim for negligent misrepresentation.

---

[15] Analogic's attempt to argue it had no special relationship with plaintiffs ignores the fact that Oncura and Analogic had an exclusive equipment arrangement prior to the execution of the Merger Agreement and Oncura's business was "heavily entrusted on the peculiar, specialized, and unique knowledge Analogic possesses with respect to the design, production, software, and overall technical operations of the ultrasound systems[.]" (FAC ¶ 53).  For this same reason, and because it was intimately involved in Oncura's business and financials pre-merger, it meets the standard for a special relationship between the parties arising out of their business relationship.  *See M & T Bank Corp. v. LaSalle Bank Nat'l Ass'n*, 852 F. Supp. 2d 324, 337 (W.D.N.Y. 2010).

[16] Analogic's continued mistaken insistence that plaintiffs are "sophisticated" and were represented by counsel during the merger negotiations between Oncura and Analogic (Mot. at 20), which similarly permeates throughout the Motion, renders their reliance on *Brinsights, LLC v. Charming Shoppes of Del., Inc.*, No. 06 Civ. 1745 (CM), 2008 WL 216969 (S.D.N.Y. Jan. 16, 2008) and *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 798 N.Y.S.2d 348 (Sup. Ct. N.Y. Cty.) misguided.

21

III.    **PLAINTIFFS HAVE PROPERLY PLEADED A CLAIM FOR BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**

Plaintiffs have properly pleaded a claim, in the alternative, for breach of the implied duty of good faith and fair dealing because plaintiffs have pleaded that even if Analogic's conduct was permitted under the Merger Agreement, it nevertheless breached the Merger Agreement by preventing plaintiffs from achieving the full benefits the earn-out provision.

Under New York law, a covenant of good faith and fair dealing is implied in all contracts and a party may be in breach of the duty even when it has abided by the express terms of the contract. *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995). Indeed, a plaintiff may simultaneously assert alternative claims for breach of the express terms of a contract and for breach of implied duties under the contract. *Hosp. Auth. of Rockdale County v. GS Capital Partners V Fund, L.P.*, No. 09-CV-8716, 2011 WL 182066, at *4 (S.D.N.Y. Jan. 20, 2011). "The implied covenant of good faith encompasses any promises which a reasonable person in the position of the promisee would be justified in understanding were included in the agreement[.]" *1–10 Indus. Assoc. LLC v. Trim Corp. of Am.*, 297 A.D.2d 630, 631 (2d Dep't 2002) (citations and internal quotation marks omitted). Here for example, plaintiffs have alleged, and they were justified in understanding that as Oncura's exclusive provider of equipment, Analogic would actually manufacture and provide them with equipment to sell (FAC ¶ 125), and that Oncura's management would be focused on the growth of the company. (*Id.* ¶¶ 114-125). Moreover, plaintiffs have alleged that Analogic engaged in "pretextual activity beyond its rights under the Merger Agreement" (*Id.* ¶ 175) that, although may not be expressly forbidden by the terms of the contract, were nevertheless calculated to, and did, prevent plaintiffs from obtaining the benefit of their bargain. *Orange Cty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 560 (S.D.N.Y. 2007) (finding implied duty claim not duplicative where plaintiff pleaded defendant

22

engaged in conduct that went beyond its rights under the contract).[17]  Specifically, before the merger, Analogic modeled Oncura's expected financial performance and showed the company growing exponentially over the first five years following the acquisition.  (FAC ¶ 103). However, and for the reasons set forth throughout the Complaint, Analogic recognized that it would lose money if it did not hold Oncura back from financial success by having to pay excessive sums under the earn-out provision in the Merger Agreement.  (*Id.* ¶ 133).  Thus, Analogic purposely shut down a successful company to benefit itself by slowing the pace and volume of Oncura's ultrasound sales, distracting Oncura's employees from their work, driving away sales personnel, stripping it of the equipment which it sells, attempting to create discord and conflict within the Oncura ranks, and preventing Oncura from marketing itself.  (*Id.* ¶ 130).

Furthermore, and contrary to Analogic's assertions, even if plaintiffs' implied duty claim is duplicative of its breach of contract claim (it is not), such claims can still be brought in the alternative.  *Fantozzi v. Axsvs Techs., Inc.*, No. 07 CIV. 02667 (LMM), 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008) (breach of the implied duty of good faith and fair dealing can be pleaded in the alternative to a breach of contract claim); *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 260, n. 23 (S.D.N.Y. 2011) (noting same).  Analogic's reliance on *Boart Longyear Ltd. v. Alliance Indus., Inc.*, 869 F. Supp. 2d 407 (S.D.N.Y. 2012) to the contrary is unavailing. None of the cases discussed in *Boart* discuss bringing such claims in the alternative.  And, in any

---

[17] Analogic's reliance on *Spread Enterprises, Inc. v. First Data Merchant Services Corp.*, No. 11-CV-4743 (ADS) (ETB), 2012 WL 3679319, at **3-4 (E.D.N.Y. Aug. 22, 2012), *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002), *Jordan v. Verizon Corp.*, No 08 Civ. 5414 (GEL), 2008 WL 5209989, at *7 (S.D.N.Y. Dec. 20, 2008), *Nat'l Football League Props., Inc. v. Dallas Cowboys Football Club, Ltd.*, 922 F. Supp. 849, 855 (S.D.N.Y. 1996), *Netologic, Inc. v. Goldman Sachs Grp., Inc.*, 972 N.Y.S.2d 33, 34-35 (1st Dep't 2013), and *Bostany v. Trump Org. LLC*, 901 N.Y.S.2d 207, 208-09 (1st Dep't 2010) is of no moment because, as demonstrated above, plaintiffs' claims for breach of contract and breach of the implied duty are based on distinct conduct.

event, Plaintiffs' implied duty claim relies on different facts than those for its breach of contract claim, as discussed above.[18]  Analogic's request to dismiss on this point should be denied.

## IV.  PLAINTIFFS HAVE PROPERLY PLEADED A CLAIM  FOR UNJUST ENRICHMENT

Plaintiffs have properly pleaded an alternative claim for unjust enrichment in the event the Merger Agreement is found unenforceable or invalid due to Analogic's fraud.  To assert a claim for unjust enrichment, a plaintiff must plead (1) that defendant was enriched; (2) at the plaintiff's expense; and (3) equity and good conscience require restitution.  *GFRE, Inc. v. U.S. Bank, N.A.*, 130 A.D.3d 569, 570 (2d Dep't 2015).

Although unjust enrichment generally will not lie when a contract exists, where the validity and enforceability of a contract is called into question, such as through a fraud claim (FAC ¶¶ 153-162), unjust enrichment claims should not be dismissed.  *See Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1272 (S.D.N.Y. 1991) (unjust enrichment claim appropriate where fraud claim challenges validity of underlying agreement).[19]  Plaintiffs' claim for unjust enrichment is therefore properly pleaded and should not be dismissed.

## V.  PLAINTIFFS HAVE PROPERLY PLEADED THEIR DECLARATORY  JUDGMENT CLAIMS

Plaintiffs properly seek a declaratory judgment under the Federal Declaratory Judgment Act (the "Declaratory Judgment Act") by pleading facts giving rise to an actual controversy and request this Court to declare the rights of the parties.  *See* 28 U.S.C. § 2201(a).  Here, it is

---

[18] Likewise, the cases cited by the *Boart* court are not novel in their reasoning and their proposition for the dismissal of duplicative claims was well-settled long before *Fantozzi*, *GS Capital Partners*, and *Eaves* declared a plaintiff's right to plead claims for breach of contract and breach of the implied duty in the alternative.

[19] Analogic's reliance on *ARS Kabirwala, LP v. El Paso Kabirwala Cayman Co.*, No. 1:16-cv-6430-GHW, 2017 WL 3396422, at *3 (S.D.N.Y. Aug. 8, 2017), *Herbert H. Landy Ins. Agency, Inc. v. Navigators Mgmt. Co.*, No. 14 Civ. 6298 (LGS), 2015 WL 170460, at *5 (S.D.N.Y. Jan. 13, 2015), and *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 587-99 (2005) to the contrary is therefore misguided because those cases did not involve claims for fraud which called into question the validity of the underlying agreement.

without dispute that plaintiffs plead substantial facts giving rise to an actual controversy and request that the Court declare the parties' rights and legal relations with respect to Analogic's conduct leading up to and following Analogic's purchase of Oncura, as well as defendants' conduct with respect to the termination of plaintiffs Presnall, Huber, Rushing, and Wiltgen. (*See generally*, Complaint); *Organic Seed Growers & Trade Ass'n v. Monsanto Co.,* 851 F. Supp. 2d 544, 550 (S.D.N.Y. 2012)*, aff'd,* 718 F.3d 1350 (Fed. Cir. 2013). In particular, plaintiffs seek various declarations (FAC ¶ 192) which, based on the foregoing, is squarely before the Court and ripe for adjudication.[20] (*Id.* ¶¶ 131, 134). For example, plaintiffs seek a declaration that in the event of a sale of all or substantially all of Analogic's assets to a third party, that third party is required by the Merger Agreement to assume all obligations of Section 2.9 of the Merger Agreement as a result of Analogic's public announcement that it seeks to sell its entire company, which would include Oncura. Additionally, none of these requests for declaratory judgment are included in plaintiffs' breach of contract claims and therefore are not duplicative of plaintiffs' breach of contract claims, as defendants incorrectly argue. (*See id.* ¶¶ 140-152). Plaintiffs have therefore adequately pleaded claims for declaratory judgment, and defendants' motion to dismiss those claims under Rule 12(b)(1) and Rule 12(b)(6) should be denied.

---

[20] Defendants' reliance on *Berger v. Scharf*, 816 N.Y.S.2d 693, 2006 WL 825171 (Sup. Ct. N.Y. Cty. 2006), which cites *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937), is misplaced. While the court in *Berger* dismissed plaintiff's declaratory judgment action seeking to enjoin a sale, here, plaintiffs do not seek to enjoin any sale and, in any event, Analogic has already announced that it is currently seeking suitors to acquire Analogic and Oncura and a decision by this court would immediately require any suitor to assume the obligations under Section 2.9, which is not the subject matter of plaintiffs' other claims. For this same reason, defendants' reliance on *City of Perry v. Proctor & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016), *Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*, No. 08 Civ. 10578 (RJS), 2010 WL 1257326, at *10 (S.D.N.Y. Mar. 12, 2010), *Camofi Master LDC v. College Partnership, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006), and *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 472 (S.D.N.Y. 2014), is misplaced.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss the third, fourth, fifth, sixth, and

eight causes of action in the Complaint should be denied.

Dated: January 26, 2018

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By:     /s/ Constantine Z. Pamphilis
        Albert Shemmy Mishaan
        1633 Broadway
        New York, New York 10019
        (212) 506-1700
        (212) 506-1800 (Fax)
        amishaan@kasowitz.com

        Constantine Z. Pamphilis
        Micah A. Grodin
        Nathan W. Richardson
        *Admitted Pro Hac Vice*
        1415 Louisiana Street, Suite 2100
        Houston, Texas 77002-7344
        (713) 220-8800
        (713) 222-0843 (Fax)
        dpamphilis@kasowitz.com
        mgrodin@kasowitz.com
        nrichardson@kasowitz.com

        *Attorneys for Plaintiffs*