UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CRAIG PRESNALL, BRIAN HUBER, JEFF RUSHING, BRYAN SANDERS, as Trustee of the 2012 Sanders Trust, WILLIAM McCUTCHEN, DELANO VINCE VINCENT, DAVID WILTGEN, NICOLAS KYRIAZIS, HELEN KYRIAZIS, JOHN KEITH TAYLOR, PERAN JED FORD, GARY THOMPSON, JANIE HODGES, WILLIAM CLAXTON, JONATHAN, BRUCE TURNER, JEAN BORDELON, THOMAS HAAS, BENJAMIN SWEERS, PATRICK OGNOWSKI, KEVIN KNIGHT, DON BOOK, GARY MASSINGILL, WILLIAM MARCINIAK, BARRY BENTLE, and KEN SANDERS, <br><br>      Plaintiffs, <br><br>  v. <br><br>ANALOGIC CORPORATION and ONCURA PARTNERS DIAGNOSTICS, LLC, <br><br>      Defendants. | No. 17 Civ. 06662 (PKC) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE THIRD, FOURTH, FIFTH, SIXTH, AND EIGHTH CAUSES OF ACTION IN PLAINTIFFS' FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ....................................................................................... 1

II. ARGUMENT .................................................................................................................... 2

    A. Plaintiffs Fail to State a Claim for Fraud .................................................................. 2

    B. Plaintiffs Fail to State a Claim for Negligent Misrepresentation ............................. 7

    C. Plaintiffs' Claim for Breach of Implied Covenant Is Duplicative of Their Claim for Breach of Contract and Should Be Dismissed ......................................... 8

    D. Plaintiffs Fail to State a Claim for Unjust Enrichment ............................................ 9

    E. Plaintiffs' Claim for a Declaratory Judgment is Non-Justiciable and Duplicative of Their Breach of Contract Claims and Should Be Dismissed ......... 10

III. CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ..................................................................................................2

*Berger v. Scharf*,
    816 N.Y.S.2d 693, 2006 WL 825171 (Sup. Ct., N.Y. Cty. Mar. 29, 2006) ...........................10

*Boart Longyear Ltd. v. Alliance Indus., Inc.*,
    869 F. Supp. 2d 407 (S.D.N.Y. 2012) ...................................................................................9

*Chrysler Capital Corp. v. Century Power Corp.*,
    778 F. Supp. 1260 (S.D.N.Y. 1991) .....................................................................................10

*Coca-Cola North America v. Crawley Juice, Inc.*,
    No. 09 CV 3259 (JG) (RML), 2011 WL 1882845 (E.D.N.Y. May 17, 2011) .........................4

*Dresner v. Utility.com, Inc.*,
    371 F. Supp. 2d 476 (S.D.N.Y. 2005) ...................................................................................2

*Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.*,
    343 F.3d 189 (2d Cir. 2003) .................................................................................................2

*HSH Nordbank AG v. UBS AG*,
    941 N.Y.S.2d 59 (1st Dep't 2012) .....................................................................................4, 6

*J&R Electronics Inc. v. Business & Decision North America, Inc.*,
    No. 12 CIV. 7497 PKC, 2013 WL 5203134 (S.D.N.Y. Sept. 16, 2013) .................................6

*Kelter v. Apex Equity Options Fund, L.P.*,
    No. 08 Civ. 2911 (NRB), 2009 WL 2599607 (S.D.N.Y. Aug. 24, 2009) ...............................2

*Kortright Capital Partners LP v. Investcorp Investment Advisors Ltd.*,
    257 F. Supp. 3d 348 (S.D.N.Y. 2017) ...................................................................................8

*LBBW Luxemburg S.A. v. Wells Fargo Securities LLC*,
    10 F. Supp. 3d 504 (S.D.N.Y. 2014) .....................................................................................7

*MBIA Insurance Corp. v. Countrywide Home Loans, Inc.*,
    928 N.Y.S.2d 229 (1st Dep't 2011) .......................................................................................6

*McBeth v. Porges*,
    171 F. Supp. 3d 216 (S.D.N.Y. 2016) ...................................................................................2

*Microtel Franchise & Development Corp. v. Country Inn Hotel*,
  923 F. Supp. 415 (W.D.N.Y. 1996) ...................................................................................6

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
  165 F. Supp. 2d 514 (S.D.N.Y. 2001) .................................................................................7

*Primavera Familienstifung v. Askin*,
  130 F. Supp. 2d 450 (S.D.N.Y.), *reconsidered on other grounds*, 137 F. Supp.
  2d 438 (S.D.N.Y. 2001) .......................................................................................................6

*Sheppard v. Manhattan Club Timeshare Association, Inc.*,
  No. 11 Civ. 4362 (PKC), 2012 WL 1890388 (S.D.N.Y. May 23, 2012) ..................................6

*Spread Enterprises, Inc. v. First Data Merchant Services Corp.*,
  No. 11-CV-4743 (ADS) (ETB), 2012 WL 3679319 (E.D.N.Y. Aug. 22, 2012) ........................9

*Warner Theatre Associates Ltd. Partnership v. Metropolitan Life Insurance Co.*,
  No. 97 CIV. 4914 (SS), 1997 WL 685334 (S.D.N.Y. Nov. 4, 1997),
  *aff'd*, 149 F.3d 134 (2d Cir. 1998) .....................................................................................2, 5

*Warner Theatre Associates Ltd. Partnership v. Metropolitan Life Insurance Co.*,
  149 F.3d 134 (2d Cir. 1998) ..............................................................................................2, 5

*Western Intermodal Services, Ltd. v. Singamas Container Indus. Co.*,
  No. 98 Civ. 8275 (RPP), 2000 WL 343780 (S.D.N.Y. Mar. 31, 2000) ....................................7

**Rules**

Federal Rule of Civil Procedure Rule 9(b) .......................................................................................6

Federal Rule of Civil Procedure Rule 12(b)(1) ...............................................................................10

Federal Rule of Civil Procedure Rule 12(b)(6) ...............................................................................10

New York Rule of Professional Conduct 1.9 ....................................................................................3

I.      PRELIMINARY STATEMENT

Plaintiffs' case, as described in their First Amended Complaint ("FAC") and in their papers opposing Defendants' motion to dismiss, rests on the theory that Analogic sabotaged Oncura's business to avoid having to make Earn-Out Payments to Plaintiffs.  But that theory—by the unambiguous terms of the Merger Agreement that memorialized Plaintiffs' sale of Oncura to Analogic—simply makes no sense.  As set forth in the Merger Agreement, the Earn-Out Payments were to be calculated as a percentage of Oncura's GAAP revenue.  *See* Ex. 1, Merger Agt., Schedule 2.9.[1]  If Plaintiffs were in a position to receive Earn-Out Payments, it would mean Oncura (and thus Analogic) was ***making*** money.  Plaintiffs try to support their illogical premise by asserting that when Analogic decided to wind down Oncura, it "recogniz[ed] a $10.2 million gain in future earn-out consideration." Opp. at 1.  But that fails to acknowledge that Analogic concurrently wrote down ***all*** of Oncura's goodwill, recording an estimated charge of $9.8 million in the second quarter of fiscal year 2017 and another charge of $6.6 million in the third quarter—resulting in a dramatic loss.  *See* Ex. 5, Form 10-K at 86.

While Plaintiffs received millions of dollars in up-front consideration from Analogic when they sold Oncura, the transaction was an unabashed money-loser for Analogic.  Analogic would have been thrilled if Oncura had been a profitable enterprise, but it was not; and Analogic elected, consistent with the Right to Operate provision in the Merger Agreement, to wind down Oncura's business.  This took place as part of a larger restructuring of Analogic's ultrasound segment.  In response, Plaintiffs concocted a story of alleged precontractual promises in an attempt to exact additional money beyond the millions Analogic already paid Plaintiffs for their unsuccessful business.  For the reasons set forth below and in Defendants' opening brief,

---

[1] Exhibit references are to the Exhibits to the Declaration of Hallie B. Levin submitted in connection with Defendants' moving papers.

Plaintiffs' fraud, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and declaratory judgment causes of action should be dismissed.

## II. ARGUMENT

### A. Plaintiffs Fail to State a Claim for Fraud

Plaintiffs' fraud claim fails for four, independently-sufficient reasons.

*First*, the Integration Provision and Principal Plaintiffs' No Reliance Clause preclude Plaintiffs' fraud claim because Plaintiffs cannot claim reasonable reliance on Analogic's alleged precontractual misrepresentations. Although Plaintiffs assert that reliance is not appropriately addressed at the pleading stage, *see* Opp. at 9-10, the law is plainly to the contrary. *Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476, 491-93 (S.D.N.Y. 2005), the highly analogous case discussed in Defendants' opening brief (at 8-9), was decided on a motion to dismiss, as were **all** of the other cases on which Defendants relied to make this point in their moving papers. *See Kelter v. Apex Equity Options Fund, L.P.*, No. 08 Civ. 2911 (NRB), 2009 WL 2599607, at *8 (S.D.N.Y. Aug. 24, 2009); *McBeth v. Porges*, 171 F. Supp. 3d 216, 225 (S.D.N.Y. 2016); *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195-96 (2d Cir. 2003); and *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007).

Plaintiffs' only other response is to argue that they are not sophisticated and were not represented by counsel, *see* Opp. at 9. That claim is contradicted by both the unambiguous language in the FAC and the plain terms of the Merger Agreement, which provide ample support for a finding of sophistication. *See, e.g., Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*, No. 97 CIV. 4914 (SS), 1997 WL 685334, at *5 (S.D.N.Y. Nov. 4, 1997) (deeming a limited partnership to be a sophisticated party on motion to dismiss), *aff'd*, 149 F.3d 134 (2d Cir. 1998). And Plaintiffs were represented in the merger negotiations by the Principal Plaintiffs and by their current counsel. *See* FAC at ¶¶ 1, 86; Ex. 1, Merger Agt. § 13.1(b), § 7.1(m). Nowhere

does the FAC allege that Plaintiffs were unable to comprehend the Agreement or the disclaimers within it. To the contrary, Plaintiffs Presnall, Huber, and Rushing, in particular, hold themselves out as experienced business leaders, *see* FAC at ¶¶ 47-51, and, as the majority owners of Oncura, they drove the transaction, *id.* at ¶ 86; Ex. 2, Info. Stmt. at 1. The assertion that Plaintiffs were not represented by counsel is a Hail Mary pass that is batted down by the allegations in the FAC and the Merger Agreement itself. Plaintiffs assert that Kasowitz Benson Torres LLP represented "*Oncura* and only for the period of time prior to the Effective Date of merger." Opp. at 9 n.2.[2] But that is the only relevant time period for purposes on the fraudulent inducement claim; and who was Oncura prior to the merger if not the Plaintiffs? Indeed, Plaintiffs' Preliminary Statement calls Oncura the "plaintiffs' company" and "their business." Opp. at 1; *see also, e.g.*, FAC ¶ 113 ("Plaintiffs had been defrauded into selling *their* company …." (emphasis added)). And the Information Statement—delivered under signature of the Principal Plaintiffs to the remaining Plaintiffs, stated that "[s]hould you have any questions concerning the Merger, the Merger Agreement or the enclosed documents, please do not hesitate to contact Dean Z. Pamphilis." Ex. 2, Info. Stmt. at 2; *see also* Ex. 1, Merger Agt., Ex. C at 7 (listing Kasowitz Benson Torres LLP as Notice recipient for Seller Representative).

*Second*, even if there were no Integration Provision or Principal Plaintiffs' No Reliance Clause, the Merger Agreement's Specific Disclaimer (including the Right to Operate provision) bars Plaintiffs' fraud claim. Plaintiffs argue that the Specific Disclaimer contains no explicit disclaimer of particular representations. But the alleged misrepresentations all concern Analogic's operation of the business post-merger, *see* FAC ¶ 155 (alleging misrepresentations

---

[2] If, as Kasowitz Benson Torres LLP is now claiming, it represented "Oncura" and not the sellers of Oncura, the fact that it is now suing Oncura in a matter substantially related to its prior representation raises serious ethical concerns. *See* N.Y. Rule Prof'l Conduct 1.9.

- 3 -

regarding Oncura's operations and management, working capital, personnel, sales and marketing, and product development and production); and therefore, plainly fall within the Specific Disclaimer's ambit as a matter of fact.  And, as a matter of law, a specific disclaimer in a negotiated contract need *not* explicitly reference the particular pre-contractual representations it disclaims.  *HSH Nordbank AG v. UBS AG*, 941 N.Y.S.2d 59 (1st Dep't 2012), cited in Defendants' opening brief, and *Coca-Cola North America v. Crawley Juice, Inc.*, No. 09 CV 3259 (JG) (RML), 2011 WL 1882845, at *4 (E.D.N.Y. May 17, 2011), illustrate the point.  In *HSH Nordbank*, "[a]lthough no such representations were set forth in the transactional documents, [defendant] allegedly told [plaintiff]" that it intended to "establish a mechanism that would 'allow it to hold stable assets for the long-term' while reducing its credit exposure to those assets for purposes of complying with internal deadlines."  941 N.Y.S.2d at 72-73.  Plaintiff alleged that the defendant actually intended to "use a number of trading strategies."  *Id.* at 73.  The court held that plaintiff was barred from asserting a fraud claim based on these allegations in light of the specific disclaimer which gave defendant the right to "deal as it [saw] fit" under the relevant contract.  *Id.*  And in *Coca-Cola*, the court held that provisions providing for at-will termination of distributor agreements and requiring consent for any assignment of distributors' rights contradicted—and therefore specifically disclaimed reliance on—any representations regarding distributors' ability to sell their routes.  *See Coca-Cola*, 2011 WL 1882845, at *4.  Similarly, here, Analogic's Right to Operate bars Plaintiffs' fraud claim.

Plaintiffs claim that they can rely on the peculiar knowledge exception to exempt them from the Specific Disclaimer, Integration Provision, and Principal Plaintiffs' No Reliance Clause because the alleged misrepresentations are not "matter[s] going to the terms of th[e] agreement." However, just as the alleged promise to preserve certain financing went to the terms of the

negotiation agreement in *Warner Theatre*, each of the alleged misrepresentations here go directly to the terms of the Merger Agreement.  And in further similarity to *Warner Theatre*, the alleged misrepresentations all concern Defendants' intent to perform future obligations, *i.e.*, providing Oncura with specified products, personnel, and resources post-merger.  Accordingly, the peculiar knowledge exception may not be invoked here.  *See Warner Theatre*, 1997 WL 685334, at *4 ("Plaintiff has pointed to no case, nor has the Court found any, in which the alleged misrepresentation found to be peculiarly within the defendant's knowledge concerned the defendant's intent to perform its future obligations.").  As set forth in Defendants' opening brief (at 11), a plaintiff cannot rely on the "peculiar-knowledge" exception in a fraudulent inducement action where the plaintiff "could have insisted that the written contract terms reflect any oral understanding on a deal-breaking issue."  *Warner Theatre*, 149 F.3d at 136.  Plaintiffs have provided no explanation—nor could they—as to why they did not incorporate the alleged promises of "specified products, personnel, and resources" into the contract.  *See* Opening Br. at 11-12.

*Third*, Plaintiffs fail to allege any actionable statement because their allegations concern statements of future intent to perform under the contract.  *See* Opening Br. at 13-14.  Like the FAC, Plaintiffs' opposition brief lists alleged misrepresentations to perform promises of future acts:  Oncura "*would* have equipment to sell"; Analogic "*would* provide Oncura with new equipment by September 2017"; Oncura "*would* have the resources which it needed to expand its business *post*-merger"; and the plaintiffs who founded Oncura "*would* direct the operations of

Oncura *post*-merger." Opp. at 14-15 (emphasis added).[3]  Such pre-contractual oral representations cannot form the basis of a fraud claim.[4]

*Finally*, even if the statements of future intent in Plaintiffs' complaint were actionable, Plaintiffs have not alleged facts to show they were false when made and made with fraudulent intent under Rule 9(b).  Plaintiffs state without support that "Analogic knew the statements [regarding post-merger operations] were untrue at the time they were made." *Id.* at 15.  However, Plaintiffs fail to allege any specific facts supporting a plausible inference that Analogic never intended to carry out its alleged promises.  *See* Opening Br. at 14-15.

Moreover, Plaintiffs fail to allege motive and opportunity to establish the requisite inference of fraudulent intent.  Despite allegations regarding Analogic's supposed interest in Oncura's technology, Plaintiffs only make a passing reference to it in their opposition brief and

---

[3] Plaintiffs' attempts to attack the case law on which Defendants rely are at best unpersuasive and at worst misleading.  Plaintiffs claim that *HSH Nordbank AG v. UBS AG*, 941 N.Y.S.2d 59, 72-74 (1st Dep't 2012), supports their position but simply quote the case for the proposition that a claim for fraudulent inducement can be based on an insincere promise of future performance *where the false promise is collateral to a contract*.  They make no effort to explain how the proposition applies here—because it does not.  The alleged false promises are not collateral to the Merger Agreement.  They make even less of an attempt to challenge Defendants' reliance on *Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11 Civ. 4362 (PKC), 2012 WL 1890388, at *6 (S.D.N.Y. May 23, 2012), merely stating that the case "is distinguishable" with no further discussion.  Lastly, Plaintiffs try to distinguish *Microtel Franchise & Development Corp. v. Country Inn Hotel*, 923 F. Supp. 415, 417 (W.D.N.Y. 1996), by incorrectly asserting that the "fraudulent misrepresentations contained in the defendant's counterclaim were explicitly contained in the terms of the contracts at issue." Opp. at 15 n.7.  While some of the alleged misrepresentations were included in the contract, not all of them were—for example, the alleged obligation to "[i]nsure that 'more than 50 Microtel franchises would be in operation during [a] one-year period.'" *Microtel*, 923 F. Supp. at 418.

[4] The cases on which Defendants rely are inapplicable here.  In *MBIA Insurance Corp. v. Countrywide Home Loans, Inc.*, 928 N.Y.S.2d 229, 233-34 (1st Dep't 2011), the fraud allegations did not depend on misrepresentations concerning an intent to perform under the contract, but of present facts collateral to the contract, including representations about loan-to-value ratios, debt-to-income ratios, borrowers' FICO scores, compliance with underwriting guidelines, independence of third-party appraisers, and certain loan ratings.  In *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 491 (S.D.N.Y.), *reconsidered on other grounds*, 137 F. Supp. 2d 438 (S.D.N.Y. 2001), the court held that a conclusory allegation that a defendant did not intend to carry out a promise is insufficient to state a fraud claim, but that in that case, there was specific evidence of conduct contrary to the alleged promise from the very beginning of the parties' relationship, creating a genuine issue of fact precluding summary judgment.  And in *J&R Electronics Inc. v. Business & Decision North America, Inc.*, No. 12 CIV. 7497 PKC, 2013 WL 5203134, at *8 (S.D.N.Y. Sept. 16, 2013), this Court held that the negligent misrepresentation claim was not duplicative of the contract claim because the alleged misrepresentation concerned a present fact—the capabilities of certain software—not an intent to perform under the contract.

instead largely focus on the alleged motive of saving the reputation of Jim Green, Analogic's former CEO.  In support, Plaintiffs rely on alleged statements from current CEO, Fred Parks, to claim that Analogic shut down Oncura to "avoid paying plaintiffs … for a company it never wanted to purchase in the first place."  Opp. at 17.  As set forth in the Preliminary Statement above, that is implausible on its face.  It is also belied by their own allegation in the very same paragraph that Parks said that the "Oncura purchase was 'sexy.'"  *Id.* (quoting FAC ¶ 113).  Plaintiffs' fraud claim fails on this basis, as well.

### B.     Plaintiffs Fail to State a Claim for Negligent Misrepresentation

Plaintiffs also fail to state a claim for negligent misrepresentation for three, independently-sufficient reasons.

*First*, as explained above and in Defendants' opening brief, Plaintiffs cannot plead reasonable reliance in support of their negligent misrepresentation claim in light of the Specific Disclaimer, Integration Provision, and Principal Plaintiffs' No Reliance Clause.  Opening Br. at 18.[5]  While Plaintiffs attempt to argue that determining whether their reliance was reasonable is inappropriate at the pleading stage, both *Western Intermodal Services, Ltd. v. Singamas Container Indus. Co.*, No. 98 Civ. 8275 (RPP), 2000 WL 343780, at *3 (S.D.N.Y. Mar. 31, 2000), and *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 535 (S.D.N.Y. 2001), cited by Defendants, were decided on motions to dismiss.

*Second*, all of Analogic's purported misrepresentations are promises about future events, which cannot support a negligent misrepresentation claim.  *See* Opening Br. at 18-19.  Again, Plaintiffs' allegations all concern *post*-merger business operations, and Plaintiffs have failed to

---

[5] Plaintiffs' attempt to rely on *LBBW Luxemburg S.A. v. Wells Fargo Securities LLC*, 10 F. Supp. 3d 504, 517-18 (S.D.N.Y. 2014) is unavailing.  In *LBBW Luxemburg*, plaintiffs specifically alleged that on the date of the closing, defendants had an internal valuation of the investment not available to plaintiffs (which is not alleged here) and the deal was unusually rushed (whereas here, the deal was negotiated for more than a year).

allege any facts to create a plausible inference that Analogic did not intend to perform the alleged *pre*-contractual promises. Plaintiffs simply point to conclusory allegations, *see* Opp. at 20, for example, that Analogic confirmed it "*would* provide Oncura … with an upgraded ultrasound system, the bk500 (codenamed 'Calisto')." FAC ¶ 87 (emphasis added).[6]

*Third*, Plaintiffs have not adequately alleged a "special relationship" to state a claim for negligent misrepresentation. Plaintiffs cite *Kortright Capital Partners*, but in that case, the Court found a "closer degree of trust … than that of the ordinary buyer and seller" because the parties had already been partners under a project agreement pursuant to which defendant invested money in plaintiff and plaintiff granted defendant a share of its operating revenue, veto power over certain corporate actions, and access to plaintiff's confidential information. 257 F. Supp. 3d at 353. No such agreement existed here. The mere fact that Analogic was Oncura's supplier of ultrasound systems prior to the merger does not create a "special relationship" and Plaintiffs cite no case law to the contrary. Indeed, the parties Confidentiality Agreement specifically emphasized that their relationship was arms-length. *See* Ex. 3, Confidentiality Agt. § 5(a).

C.  **Plaintiffs' Claim for Breach of Implied Covenant Is Duplicative of Their Claim for Breach of Contract and Should Be Dismissed**

Plaintiffs have no claim for breach of the covenant of good faith and fair dealing because the claim is based on the same alleged conduct that supports their breach of contract claim. In their opposition brief, Plaintiffs point to various paragraphs of the FAC but do not explain how the allegations are specific to the good faith and fair dealing claim. At bottom, both claims are based on Analogic's alleged breach of the Merger Agreement by undermining Plaintiffs' ability

---

[6] Plaintiffs attempt to rely on *Kortright Capital Partners LP v. Investcorp Investment Advisors Ltd.*, 257 F. Supp. 3d 348, 357 (S.D.N.Y. 2017), to argue that their allegations are not mere statements of future expectations. However, in *Kortright*, the plaintiff alleged that the defendant had failed to disclose that it needed client consent to participate in the transaction. Therefore, the misrepresentation was not purely a statement of intent to perform under the contract, distinguishing it from the allegations here.

to perform under that Agreement and to receive the Earn-Out Payments.  Plaintiffs assert that Analogic took actions to avoid "having to pay excessive sums under the earn-out provision in the Merger Agreement."  Opp. at 23.  Although Defendants vigorously deny the allegations, if taken as true, the conduct alleged would constitute a breach of the Merger Agreement, which prohibits Analogic from "knowingly, intentionally or deliberately tak[ing] any action for the purpose of avoiding the payment of any Earn-Out Payment."  Ex. 1, Merger Agt. at 14.  Plaintiffs do not avoid redundancy by claiming that "even if Analogic's conduct was permitted under the Merger Agreement, it nevertheless breached the Merger Agreement by preventing plaintiffs from achieving the full benefits [of] the earn-out provision."  Opp. at 22; *see Spread Enters., Inc. v. First Data Merch. Servs. Corp.*, No. 11-CV-4743 (ADS) (ETB), 2012 WL 3679319, at *4-5 (E.D.N.Y. Aug. 22, 2012) ("Such a claim that the Defendants breached the covenant of good faith and fair dealing through the bad faith exercise of their discretion can only stand where either there is no claim for breach of contract or where the two claims are based on distinct conduct.").  Accordingly, the Court should dismiss Plaintiffs' good faith and fair dealing claim because it is duplicative of their breach of contract claim.[7]

**D.       Plaintiffs Fail to State a Claim for Unjust Enrichment**

Plaintiffs have effectively conceded that, upon dismissal of their fraud claim, their unjust enrichment claim should be dismissed as duplicative of their breach of contract claim.  Plaintiffs only argue that "where the validity and enforceability of a contract is called into question, such as through a fraud claim, unjust enrichment claims should not be dismissed."  Opp. at 24.  But

---

[7] Plaintiffs also argue that even if their claim is duplicative, it can be brought in the alternative, citing cases decided before *Boart Longyear Ltd. v. Alliance Indus., Inc.*, 869 F. Supp. 2d 407 (S.D.N.Y. 2012).  They claim Defendants' reliance on *Boart* is unavailing, asserting that "[n]one of the cases discussed in *Boart* discuss bringing such claims in the alternative," Opp. at 23, but that is irrelevant.  *Boart* held that despite plaintiff's assertion that the good faith and fair dealing claim was based on a different factual predicate than its breach of contract claim, the argument had little merit as the claims were based on the same factual elements.  So, too, are Plaintiffs' claims; accordingly, the good faith and fair dealing claim must be dismissed.

the case on which they rely, *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260 (S.D.N.Y. 1991), holds that "if the fraud allegations are dismissed … then unjust enrichment is not a valid theory of recovery." 778 F. Supp. at 1272.  Likewise, upon dismissal of Plaintiffs' fraud claim, the unjust enrichment claim should be dismissed as well.  *See* Opening Br. at 22-23.

E.  **Plaintiffs' Claim for a Declaratory Judgment is Non-Justiciable and Duplicative of Their Breach of Contract Claims and Should Be Dismissed**

Plaintiffs try to elide Defendants' arguments regarding declaratory judgment to muddy the deficiencies of their claim.  For example, Plaintiffs attempt to distinguish *Berger v. Scharf*, 816 N.Y.S.2d 693, 2006 WL 825171 (Sup. Ct., N.Y. Cty. Mar. 29, 2006), upon which Defendants rely to argue non-justiciability, and then claim that the other cases cited by Defendants are inapplicable for the same reason.  However, Plaintiffs' request for declaratory relief must be addressed in two separate parts and dismissed for two different reasons.

The first part of the claim seeks an order regarding a sale that remains hypothetical.  *See* FAC ¶ 192(a).  Plaintiffs state that Analogic has announced that it "seeks to sell its entire company"—not that it has sold the company.  Opp. at 25.  Therefore, the first part of the declaratory relief claim is non-justiciable and must be dismissed under Rule 12(b)(1).  The second part of the claim merely paraphrases the request that Defendants be found to have breached their obligations under the Merger and Key Employment Agreements.  *See* FAC ¶¶ 192(b)-(g).  Each of the issues set forth in paragraph (b)-(g) will be determined by adjudication of the breach of contract claims.  Accordingly, the second part of the declaratory relief claim should be dismissed under Rule 12(b)(6).  *See* Opening Br. at 23-25.

### III.  CONCLUSION

For the reasons set forth above, the Court should grant Defendants' motion to dismiss causes of action three, four, five, six, and eight.

Dated: February 9, 2018

                                      */s/Hallie B. Levin*
Hallie B. Levin
Fiona J. Kaye
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800 (tel.)
(212) 230-8888 (fax)
hallie.levin@wilmerhale.com

*Attorneys for Defendants Analogic Corporation and Oncura Partners Diagnostics, LLC*